BOSTON TOWBOAT CO. v. CHASE MACH. CO.

(Circuit Court of Appeals, Sixth Circuit. October 7, 1902.)

No. 897.

1. PATENTS—INFRINGEMENT—TOWING MACHINE.

The Shaw & Spiegle patent, No. 383,917, for a towing machine, which describes a combination with a cable drum of an engine, the shaft of which is geared to said drum to balance the load on the cable, and a pressure-regulating valve located in the steam passage to the engine cylinder and operatively connected with the shaft of the drum, is limited by the prior art to the specific means described and claimed, among which is the valve technically known in mechanics as a "pressure-regulating valve," and it is not infringed by a machine in which such valve is not used.

On Rehearing. For former opinion, see 50 C. C. A. 318, 112 Fed. 432.

Harvey D. Goulder and George B. Marty (S. H. Holding and Frank S. Masten, of counsel), for appellant.

Albert E. Lynch, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and WING, District Judge.

WING, District Judge. Upon the rehearing of this cause the consideration of the court has been confined chiefly to the question as to whether the state of the prior art, as disclosed by the record, does not compel a holding either that the appellant's patent is void for want of novelty and by reason of anticipation, or that its scope is so narrowed as not to include the device used by the appellee. The specifications of the appellant's patent point out the purpose of the device to be the obviation of a difficulty which is stated to be incident to the towing of vessels in a turbulent sea. With reference to this difficulty, it is stated in the specifications that:

"When one vessel is being towed by another in a turbulent sea, the tow line, cable, or hawser is subjected to sudden alternating degrees of tension consequent upon the changing relations of the vessels to each other as they ride upon the waves or settle in the troughs of the sea, and the sudden strains on the cables are sometimes so enormous as to be beyond the endurance of the cables, and the latter are therefore liable to be broken."

The means for accomplishing this object are described to be—

"A balancing cable drum, the balancing being effected by a steam or air engine so geared to the drum that the normal pressure of the engine cylinder or cylinders will balance the normal strain on the cable; but, if the strain on the latter be suddenly increased, the cushioning effect of the steam or air in the engine cylinder or cylinders will permit the cable to 'pay out' somewhat, and thus yield to the sudden strain, thereby rendering the action of the cable yielding or elastic. To counterbalance the increased strain on the cable, we provide a pressure-regulating valve, which is geared to the shaft of the cable drum and connected with the engine cylinder or cylinders, so that, when the strain on the cable causes the latter to pay out, the turning of the drum shaft will increase (by means of the regulating valve) the pressure in the said cylinders, and thus quickly counteract the tendency of the cable to pay out, and, when the lessening strain on the cable permits the drum to be turned (by the pressure regulating of the engine cylinder or cylinders), the reverse movement of the drum shaft will reverse the screw of the regulating pressure valve, to bring the pressure down to equalize the lessening strain on the cable."

Claim 1 of the patent is as follows:

"In a towing machine, the combination, with a cable drum, of an engine the shaft of which is geared to said drum to balance the load on the cable, and a pressure-regulating valve located in the steam passage to the engine cylinder or cylinders and operatively connected with the shaft of said drum, whereby the pressure of the engine cylinder or cylinders is increased as increased strain on the cable causes the latter to be paid out, and is diminished as the strain on the cable is lessened and the latter is hauled in, substantially as set forth."

Claims 2, 3, 4, and 5 cover the same device as claim 1, with additions concerning the minor mechanism relating to the operation of the connection between the drum and the pressure valve. The device designed to be covered by claim 1 is a machine to be used in towing, consisting of an engine, the shaft of which is geared to a drum adapted to have a towing cable wound about it, and having mechanism connecting the shaft of the drum with the valve which admits steam to the

cylinders of the engine. This connecting mechanism is adapted to operate the valve when the shaft of the drum is put in motion. When the drum is operated by the unwinding of the cable, the connecting mechanism opens the valve. When the drum rotates in the opposite direction, the connection tends to close the valve. There are certain stops provided in the mechanism which prevent the operation of the valve in opening and closing beyond certain desired limits. While the valve which is subject to the operation of this connecting mechanism is described in the specifications and the claim as a "pressure-regulating valve," it is urged by the appellant that the valve intended by this designation is a simple throttle valve. We will consider the patent, in connection with the devices disclosed in the prior art, as if, instead of the designation "pressure-regulating valve," there had been used the term "valve," or "throttle valve."

In the English patent to Gray, sealed June 11, 1867, and dated December 18, 1866, there is described, as the second part of the invention, a steam steering engine, the purpose of which was to keep the rudder of a ship in any required position and to restore it to that position against the contrary action of the sea. To quote from the specifications:

"To accomplish this, I construct an engine with two cylinders (sometimes called a 'pair of engines,' but in this specification I will use the term 'engine' to include the whole), with their steam and exhaust passages and slide valve so arranged that the direction of the steam and the exhaust can be reversed by moving a special admission valve into one or other of its positions. I attach this admission valve by suitable connections to a part of the telegraph gear described in the preceding part of this specification, and there designated the traverse lever, which receives its motion from the screwed shaft, therein also described; and I thereby communicate motions to this admission valve corresponding to the longitudinal motions of that screwed shaft, so that the position of this admission valve with reference to its whole travel will always correspond with the position of the screwed shaft with reference to its longitudinal travel, and it will agree in its positions, also, with the positions and indications of the telegraph index lever. * * * The steering-wheel shaft may be either the shaft of a chain barrel, or a screw with side arms, or the screw or shaft for actuating hydraulic or other steering apparatus."

On page 19 of the specifications, Gray describes the valve referred to as follows:

"K, stop valve for letting on the steam to the engine. This valve does not form a working part of the engine, but is merely an admission valve. When it is opened at one end, the engine rotates in one direction; when it is opened at the other end, the engine rotates in the opposite direction. * * * This stop valve is opened and shut by a lever, $Q^3$, on the traverse lever shaft, Q, and the position of the stop valve with reference to its whole travel will always correspond with the position of the screwed shaft, D, with reference to its longitudinal travel."

There appear in the drawings and specifications of this patent the combination of a drum having a drum shaft which is operated by a steam engine, and an admission valve which is operated by a lever, $Q^3$,—this lever taking its motion from a beveled gear end upon the drum shaft. By the following language in Gray's specifications it appears that Gray had fully in mind the idea of using steam in the cylinder of the engine as a means of lessening the shock of waves:

"The steering engine acts, under these circumstances, as a yielding, but powerful, brake, and restrains the rudder into its required position, acting of its own accord within the limits of the traverse of the screwed shaft."

In the English patent to Scott and Gilmour, June, 1878, there is described a mechanism connected with the towage of ships or vessels for facilitating the instantaneous and efficient coupling or uncoupling of towing hawsers, wire ropes, or chains, and also for preventing sudden jerks upon or breakage of these, particularly applicable for, and giving greater safety when towing in a seaway or squally weather. In these provisional specifications there is suggested a pressure fluid tow cylinder, made strong, with close screwed-on ends and buffer springs fitted within and close up to the ends, and of such a length between the inner ends of the buffers as to contain the air, steam, or other elastic fluid in front of the piston, and allow of its working freely to the extent required for the varying strain on the working parts of the cylinder and piston, and the consequent lengthening, or shortening, or motion of the tow rope. The steam from the boiler, or the compressed air or other elastic fluid from force pumps or other pressure vessels, is admitted by a branch pipe, with inlet back pressure self-closing check valve and chest fitted in the front end of the cylinder. It is further stated in the specifications as follows:

"On board the tow ship, or the ship to be towed, when they have the steam winding engines on board, the end of the towing rope or the coupling chain thereof may be attached to the winding barrel of such steam winding or hauling engines; the winding strain of the steam engine and its gearing being made to act or sustain the hauling strain, and yet give the yielding effect analogous to the action of the steam or air cylinder when this arrangement is found more convenient than by having the special steam or air cylinder fitted and applied for the said purpose."

In the English patent to James Taylor, No. 3,999, dated October 2, 1880, it is stated in the provisional specifications that the invention described is applicable for use with cables for ships' anchors, and for general use for warping and hauling on board ship, especially salvage ships, and for towing purposes. In the specifications, on page 4, appears the following:

"If desired, the apparatus may be worked from a donkey engine, or the main engines through the bevel gear, I, and the shaft, J. * * * To prevent sudden jerks on the cable, paying out the cable by overcoming. the friction when a steam motor is used, I connect a portion of the cable, G, to a lever which operates the valve of the engine sufficiently to cause the apparatus to take in or recover the portion paid out by the jerk."

In the English patent to Sickles of 1862 there is described an apparatus for working the steering gear of a ship, which is also applicable for various other purposes, such as for pumping or lifting weights. On page 4 of the specifications it is said:

"To insure the use of the least possible power required to operate the steering apparatus, the valve or valves which admit the steam or other fluid under pressure to the working cylinders is so connected with the steering apparatus that, while the steersman, by turning the steering wheel, opens the valve to admit steam to the cylinders, so as to cause the rudder to move, the steering apparatus, in moving, will give this same valve or valves a closing motion, and thus modify the extent of the opening of the valve, and the rapidity of admission of the steam or other fluid to the working cylinders."

On page 5 it is said:

"T is a hoisting drum on the engine shaft, upon which a rope is wound when using the steering engine as a hoisting engine."

In this patent there is shown an engine operating a drum, with which is operatively connected the valve which admits steam to the engine, as appears from the following language:

"But, if the engine shaft moves, the position of the pins, t, t, t, t, in the V-slots, will depend upon the resistance offered to the engine; and, if this resistance is greatly increased, the continuous movement of the spiral cam will carry the pins to one or the other end of the slots, u, u, u, u, and the full opening of the valves will be obtained to give full power to the cylinders in overcoming the resistance offered by the rudder or steering apparatus. The arrangement by which the extent of the effective opening of the valves is made to correspond with the resistance offered by the steering apparatus can be variously modified."

The principal object of the device described and claimed in the appellant's patent was to use the steam in the cylinder of an engine as a spring or cushion, which would yield to an unusual, and possibly breaking, strain upon the towing cable in a rough sea, and thus prevent a parting of the cable. Connecting operatively the shaft of the cable drum with the valve admitting steam to the engine was for another purpose, namely, to recover the outpay of the cable after the force of the strain which had occasioned it had been expended. The idea of using steam or air as a cushion against strain was old. Controlling the supply of steam to the engine by valves actuated by some moving portion of the engine or its connections was old. The use of these combined devices in connection with towing was old. If invention was required to construct the device described in the appellant's patent, it was in the specific means used in combining and connecting the parts of the mechanism. Without expressing an opinion as to the validity of the patent upon which suit was brought, it is enough to say that it is so limited in scope by the state of the prior art as to be confined to the specific means described and claimed. The appellee's device is not within this limited field.

The decree of the circuit court is affirmed.