## DOTEN v. CITY OF BOSTON.

(Circuit Court of Appeals, First Circuit.   June 2, 1905.)

### No. 559.

PATENTS—DAMAGES RECOVERABLE FOR INFRINGEMENT—PROFITS.

The owner of a patent may recover from the user of an infringing device as profits the amount saved by defendant by the substitution of such device for one previously used, although the saving resulted from the fact that the devices previously used were frequently broken through accident or the carelessness or miscalculation of employés or others having to do with their use, while the patented device was not subject to such breakage, where the accident and carelessness are recognized to be appreciable sources of danger to employers in like case, and where there is evidence from which the amount of the saving can be estimated with reasonable accuracy.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 566–576.

Accounting by infringer of patent for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Norman F. Hesseltine, for appellant.

Thomas M. Babson, for appellee.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

LOWELL, Circuit Judge. This was a bill in equity to restrain the infringement of letters patent No. 308,308. There was a decree for the complainant, and a reference to a master to take an account of profits. The master found that the defendant had realized a profit of not less than $6,000, and reported that the complainant was entitled to recover that sum. The learned judge entered a decree for nominal damages only, for reasons which will appear hereafter. The complainant appealed.

The invention concerns an improved gangway, loosely hinged or pivoted at its inner or shore end to a ferryboat drop, and having its opposite or outer end adapted to be raised or lowered by means of a wheel and axle and chain connection, the said gangway being also provided with a counter balance tending to keep it always longitudinally moved outward as far as the loose hinge would permit. This replaced the combination of a fixed nonprojecting drop and a platform movable by hand, the latter used to compensate for inequalities of level between the drop and the boat at various times of tide. This platform also bridged the gap between the drop and the boat when the two were nearly at the same level. The patented gangway, being pivoted, was adjustable to the tide, and by extending longitudinally beyond the drop it bridged the horizontal gap. Both the uses of the platform were thus met, and it has been dispensed with. The evidence showed that a very considerable saving in labor and in the cost of construction and repairs, particularly in the case

of platforms, had resulted to the defendant by the substitution of the patented device; but a pivoted drop or platform was old in the art, and the master found that the saving to the city in time and labor by dispensing with the use of the platform was not due appreciably to the defendant's use of the patent in suit (a pivoted gangway provided with a longitudinally yielding movement) as distinguished from a pivoted drop or way not so provided. If, however, the pivoted drop be used with neither the old platform nor the patented extensible gangway, a gap is left between the drop and the boat dangerous to passengers. The master reported that the defendant did not deny that by reason of its use of ways having the defendant's longitudinally yielding joint the dangerous gap had, in fact, been kept automatically closed, thereby preventing the danger of injury to passengers which might otherwise have existed. But he also found that no evidence was offered of pecuniary demand upon or recoverable from the defendant by reason of such injuries to passengers, and so he awarded nothing to the complainant by reason of the greater safety realized from the patented device. The master found, however (so we interpret his report), that the defendant had always recognized the desirability of some injury-preventing device. The dangerous gap could be closed only by the old platform or by the patent in suit, and this whether the drop was pivoted or not. While, therefore, the master allowed nothing for the pivoting of the patented gangway, and nothing directly for the greater safety of passengers, yet he recognized that this greater safety was reasonably sought by the city, and that, if the patented device which secured safety was less expensive than the movable platform which it replaced, the profit could be recovered by the patentee. The defendant might not be bound to use any injury-preventing device. The evidence might show that the patented device was not more profitable or less costly to the defendant than an open gap between the drop and the boat. But if the defendant saw fit to use the patent, he should pay for the saving which arose from its use as compared with the use of any other injury-preventing device. The master found testimony that when the old system of platforms was in use they were continually placed out beyond the line or front of the drop, and that the boats coming in were continually breaking these platforms by coming into collision with them. He found that the immunity from damage by collision which the defendant had enjoyed by reason of the adoption of the patented device might be measured directly by the saving of the expenditure for labor and materials, and that no prior device was open to the defendant to use by which such saving could have been accomplished.

The master stated the question as follows: "The question then arises how frequently, owing to carelessness, improper operation, or miscalculation, owing to the varying heights of the boats, the gangway or supplemental drop would be left down." He then found that the saving in repairs due to the injury to each drop by being struck by the boat, if accidentally left down, would certainly be not

less than $1,000 per annum, and upon this he based his total finding of $6,000.

The learned judge in his opinion said:

"In this case the finding or estimate of savings to the city is, as it seems to me, necessarily contingent upon probable negligence or miscalculation. The finding is based upon destruction or waste which would have probably resulted from negligence and miscalculation if the use of the old system with movable platforms had been continued. This, I think, throws the question of savings or profits so far into the field of conjecture and uncertainty that they cannot become the foundation for recoverable profits or savings. The situation here is not like one which involves the employment of a device which, without any contingencies, dispenses with men or power, and thus, with no uncertainty, at once curtails the expenditures of the user."

He therefore entered a decree for nominal damages only.

As we understand the question presented for our determination, it is this: Has the complainant shown substantial profit or saving arising to the defendant by reason of the lessened breakage from the use of the patented gangway? The master has found that the saving existed, and that it was due to the use of the patented device in place of any other then available to the defendant. He has further found that the defendant's saving and profit arose in large measure from the protection afforded the defendant by the patent against damage caused by the carelessness, improper operation, and miscalculation of its agents. Is the profit the less recoverable because it is caused as just stated? We find it impossible to distinguish the patent in suit from other labor-saving devices which are deemed patentable. If every employé invariably worked with perfect memory, accuracy, and good judgment, labor-saving devices would be fewer and less important than they now are. That the value of a labor-saving device is based largely, or even wholly, upon the fact that those who work are frail and imperfect human creatures, and not beings of perfect efficiency, wisdom, and honesty, does not lessen the value of the device or the profit arising therefrom. The cash register and the watchman's time clock, for example, are deemed patentable, yet they are used to protect an employer not only from the negligence, but from the dishonesty, of his employés. A labor-saving device is deemed patentable if the weakness or carelessness or dishonesty of the employé, against which the patented device is effective, is recognized as a common failing, and an appreciable source of danger to employers in like case. In the Cawood Patent, 94 U. S. 695, 24 L. Ed. 238; Id., 110 U. S. 301, 28 L. Ed. 154, the patentee was allowed to recover as profits the saving in repairing broken rails by the patented device; yet these rails had doubtless been damaged by improper operation as well as by ordinary wear and tear. Probably no sharp line can be drawn between the two causes. Giving the master's report its fair interpretation, his statement that the cause of the defendant's damage was based upon carelessness, imperfect operation, and miscalculation, amounts to a statement that it was based upon human frailty. Under the old system the damage was caused by ordinary wear and tear, sometimes the result of negligence or miscalculation, some-

times the result of wind, current, or tide, setting the ferryboat into an unexpected position or giving it unexpected speed. This damage was frequent and usual, and could most cheaply be prevented by the patent in suit. For these reasons we think that the saving thus made by the defendant was recoverable in this accounting. See Walker on Patents, §§ 725–734a; Robinson, § 1145.

It remains to be considered if the amount of the saving was shown with sufficient definiteness. Was there evidence of the defendant's actual profit? There is nothing in the record to show that the master could take an account in detail in the ordinary way in which accounts are taken, and so a general estimate was necessary. As was said in Suffolk Co. v. Hayden, 3 Wall. 315, 320, 18 L. Ed. 76:

"This question of damages, under the rule given in the statute, is always attended with difficulty and embarrassment both to the court and jury. There being no established patent or license fee in the case, in order to get at a fair measure of damages, or even an approximation to it, general evidence must necessarily be resorted to. And what evidence could be more appropriate and pertinent than that of the utility and advantage of the invention over the old modes or devices that had been used for working out similar results? With a knowledge of these benefits to the persons who have used the invention, and the extent of the use by the infringer, a jury will be in possession of material and controlling facts that may enable them, in the exercise of a sound judgment, to ascertain the damages, or, in other words, the loss to the patentee or owner, by the piracy, instead of the purchase of the use of the invention."

Upon the whole, we think there is enough in the master's findings and in the evidence submitted by him to show that more than nominal damages should have been assessed. The master has found that there was "evidence as to the size and cost of the ways and of the amount which would be required to replace them if injured or destroyed"; and also "evidence, necessarily conjectural, as to how often accidents would occur to such ways by reason of their being negligently or accidentally left down in position to be struck by the incoming boat." (Record, p. 31.) On pages 32 and 33, the size of the foot gangway and the amount of lumber contained in it are specifically stated. The master himself examined the actual structures, and further found that by uncontradicted testimony it appeared "that an expense of about three dollars per day for labor and from fifty to seventy-five cents a day for stock was incurred by the defendant city in making good the damages caused by these collisions at the ferry where the patented structures were afterwards introduced." On recommittal, "in addition to the evidence, the substance of which has been reported," he found that the following testimony was true:

"Q. How did the amount of carpenter work and repairs under the Doten system compare with the amount of carpenter work and repairs under the old system? A. I should say it was considerably less. I could not say how much. Three-quarters, I should say.

"Q. What would be the saving in money? A. Three dollars a day."

It should be noticed that the recommittal order did not direct the master to report all the evidence upon which his findings of profit had been based, but directed him to report only that evidence

upon which were based any findings in the supplemental report more specific than those included in the report originally filed. Therefore the order of recommittal and the supplemental report leave untouched, for the most part, the findings and statement of evidence contained in the original report. Taking the reported evidence and findings together, there is enough to show substantial profit.

Having thus determined that the learned judge was in error in directing a decree for nominal damages only, this court, in its discretion may (1) send the case back to the Circuit Court for further instruction, or (2) itself proceed to the assignment of profits by dealing with the master's report as affected by the defendant's exceptions. See the Cawood Patent Case. These exceptions raise questions of importance, which, considering certain ambiguities in the master's report, can best be dealt with in the Circuit Court. We go no farther, therefore, than to indicate the principles which must govern that court in dealing with the exceptions. The defendant contended that the saving for which the complainant could recover should be limited to that which arose in connection with the footways giving access to the sides of the ferryboat, as distinguished from the trafficway giving access to the middle. The defendant sought to establish this limitation by the construction of the patent itself, and by pointing out that before the employment of the patented device there had been used with the trafficway no movable platform which received damage by collision with the incoming boat. Leaving entirely to the Circuit Court the consideration of the first of these two contentions, if it shall appear to be material (the record does not contain the patent), we find that, as we interpret the master's report, the second may have some foundation. If there was no evidence to show damage from collision to skid or platform formerly used in the trafficway, no profit from the use of the patented device in connection with the trafficway can be recovered by this bill, unless the complainant can show that there also the defendant would have adopted a movable platform likely to be damaged, even had the patented device never been invented. Moreover, it is not easy to ascertain in precise detail what was the master's method of computing profits. There was evidence of an expense of about $3 a day for labor, and from 50 to 75 cents a day for stock in making good the damage formerly caused at the ferry; and there was evidence that the carpenter work and repairs cost considerably less under the patented system than under the old system, a saving in money of about $3 a day. It was found also that the boats ran day and night, both Sundays and week days. If this computation of $3 a day was based upon a saving in regard of the footways only, as distinguished from the trafficway, then an allowance of $100 for each of the eight footways in the course of the year may not be excessive. Upon the whole, however, while enough appears in the master's report to show that the complainant is entitled to more than nominal damages, we are of opinion that the precise amount recoverable can best be determined by the Cir-

cuit Court proceeding in accordance with the principles laid down in this opinion.

The decree of the Circuit Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with our opinion passed down this day; and the appellant recovers costs of appeal.