PETER SCHOENHOFEN BREWING CO. v.
ALVEY–FERGUSON CO.

ALVEY–FERGUSON CO. v. PETER SCHO-
ENHOFEN BREWING CO.

(Circuit Court of Appeals, Seventh Circuit.
June 30, 1926. Rehearing Denied
September 29, 1926.)

Nos. 3507, 3530.

**1. Patents ⚖⇒324(5).**

Circuit Court of Appeals will not consider
alleged anticipation on appeal from accounting.

**2. Patents ⚖⇒322.**

Evidence adduced on standards of compari-
son on accounting for patent infringement *held*
not sufficiently clear and definite to warrant re-
liance thereon.

**3. Patents ⚖⇒318(4).**

Patent infringer, installing equipment after
notice and continuing infringement after de-
cree, and failing to comply with equity rule 63,
*held* not entitled to complain that, on account-
ing, savings of entire department were included.

**4. Patents ⚖⇒318(3).**

Trial court *held* not to have erred in choos-
ing smaller of two amounts calculated by ac-
countants to have been savings resulting to
patent infringer.

**5. Patents ⚖⇒319(1).**

Assessment of punitive damages for pat-
ent infringement is matter of discretion.

Appeals from the District Court of the
United States for the Eastern Division of the
Northern District of Illinois.

Patent infringement suit by the Alvey-
Ferguson Company against the Peter
Schoenhofen Brewing Company. Decree
overruling exceptions to master's report on
accounting, and both parties appeal. Af-
firmed.

See, also, 245 F. 762; 257 F. 314, 168
C. C. A. 398.

Paul N. Critchlow, of Pittsburgh, Pa.,
for plaintiff.

George A. Chritton, of Chicago, Ill., for
defendant.

Before ALSCHULER, PAGE, and AN-
DERSON, Circuit Judges.

ANDERSON, Circuit Judge. The Al-
vey-Ferguson Company brought suit against
the Peter Schoenhofen Brewing Company
upon three patents. One was withdrawn
before the hearing, one was held invalid as
to the claims sued on, and the third was held
valid and infringed. This last patent was
issued May 23, 1905. The parties will be
referred to as they appeared in the court
below.

14 F.(2d)—60

Before the defendant installed the first
infringing device, plaintiff received infor-
mation of its intention to do so, and on
January 28, 1907, notified defendant that it
would be sued as an infringer if it did.
Nevertheless the infringing device was in-
stalled, and altogether 15 of such devices
were put in and used during the accounting
period. The suit was brought June 8, 1908.
The decree adjudging the patent valid and
infringed was entered November 9, 1917.
On appeal to this court the decree was af-
firmed January 7, 1919, and the mandate
issued March 3, 1919. The accounting be-
fore the master began April 3, 1919, and
the master's report was filed January 29,
1923. The claim made before the master
was for savings only. Exceptions were filed
to the master's report by both parties.
These were overruled by the court, and the
decree now appealed from was entered Sep-
tember 15, 1924.

On the 3d day of April, 1919, the master
called upon the defendant to file an account
under equity rule 63. On May 8, 1919, the
defendant filed with the master a statement
to which exceptions were filed. Thereupon
the plaintiff procured the services of a pub-
lic accountant, Greene, who examined the
books, records, and papers of defendant
company, and made statements purporting
to show the savings made by the defendant
through the use of the infringing conveyors.
The defendant also procured an accountant,
Grant, who examined the books and records
and stated the account for it. The conclu-
sions reached by these accountants differed
largely. The defendant's officers were ex-
amined for the purpose of ascertaining facts
upon which to base a more accurate account-
ing. The conditions encountered were diffi-
cult. It does not appear that the defend-
ant gave much assistance in the endeavor to
get at the facts. The master in his report
says:

"The defendant put forth no effort to
assist the plaintiff in reaching conclusions as
to whether savings had been made, and, if
so, to what extent. The account filed under
equity rule 63 gave no information of any
value to the plaintiff or to the master. In-
stead of stating facts and furnishing figures
upon which an account might be stated, it
dealt in conclusions and arguments, and as-
serted that it was difficult to state gains,
profits, and advantages derived from the in-
fringing conveyors, and that it was exceed-
ingly questionable whether any gains, prof-
its, or advantages had been derived. The
failure of the defendant to furnish an ac-

count and the conditions hereinafter stated made it necessary for plaintiff to arrive at the gains and savings as near as possible without defendant's aid, and Greene was employed for that purpose. He encountered conditions that rendered his work difficult."

After stating what those conditions were —the state of the records of the bottling department; the fact that certain pay rolls had been destroyed while the suit was pending, some after the case had been referred to the master—the master in his report gave the history of the efforts made on the part of the plaintiff to develop the facts upon which a proper accounting could be made. Some tangible evidence having been extracted from the defendant, plaintiff's accountant submitted two schedules of the account, one called A and the other B. Under A the accountant stated the savings as $98,350.02, under B the amount was stated to be $49,-588.25. The master concluded the larger amount was the proper one and recommended it in his report. The court differed from the master, took the smaller amount, and entered its decree for that sum. Exceptions were filed to the report, which were overruled by the court, and the master's report was approved, except as to the amount of the decree as above stated.

[1] The defendant has assigned 15 errors. To notice them all would unduly extend this opinion, and we can only notice those which were particularly stressed upon the hearing and are insisted upon in the brief. The defendant insists that a certain construction which it introduced in evidence to furnish a standard of comparison, the Tidewater construction, is an anticipation of the patent, and urges it as a ground for now holding the patent invalid as to claims 1, 2, and 3. This Tidewater construction was known to the defendant prior to February 16, 1921, as a stipulation was that day filed showing that it was installed in the packing room of the case department of the Tidewater Oil Company in May, 1920. The defendant first presented this question in its brief filed here December 15, 1925. Thus about five years passed from the time of its discovery by the defendant and the presentation of it to the court for consideration. The practice in such case is well settled. But, whatever form it takes, it is after all essentially an application for a rehearing for newly discovered evidence. In such case, a party must move promptly after the discovery of the evidence, and an unexplained delay of five years precludes its consideration now. We know of no practice, such as is sought to be invoked here, of bringing the matter to the attention of the court upon an appeal from an accounting. It cannot, therefore, receive favorable consideration.

[2] The principal assignments of error insisted upon by the defendant are those which relate to what it calls its standards of comparison. The complaint is that the master and the court below disregarded this proof of the defendant entirely. The ground of this insistence appears to be the fact that the master and the court put more reliance upon other evidence and based their findings upon it. Much argument is indulged in, in the briefs, and many authorities are cited upon the law, as to standards of comparison; the principal dispute being whether the standard should be in existence at the date of the patent or at the time of the infringing acts. It is not necessary to decide this dispute. It is enough to say that in this case the evidence upon the standards is not sufficiently clear and definite to warrant the inference sought to be drawn from it. The circumstances under which the infringement was begun and carried on do not put the defendant in a favorable position to urge this defense. As the master said in his report:

"The defendant was aware of plaintiff's patent, and had been warned by the letter of January 28, 1907, before any infringing conveyors had been installed, that if it should install the conveyor it then contemplated, and afterwards did install, it would thereby infringe plaintiff's patent and would be held responsible. The defendant knew about some or all of the conveyors now set up as standards of comparison before purchasing the first infringing conveyor, and might have selected any of them, instead of what it actually did select; but the engineers and those in control of defendant's affairs, knowing its necessities and limitations, the lay-out of its plant, the space to be used for such conveyors, the other apparatus in the plant with which the conveyors must be connected and co-operate, and all the other conditions that must be considered in settling a question of this kind, regardless of the warning and knowledge in that respect, declined to accept any other than the infringing conveyor. The first infringing conveyor was installed towards the end of the fiscal year 1907, and defendant thereafter gradually increased the number until at least 15 were installed and in operation in the plant; and all, except the first infringing conveyor, were installed after this suit was begun. These

conveyors were kept in repair and when worn out were replaced.

"It is fair to assume that the defendant regarded the infringing conveyor as more desirable than any other conveyor on the market, and was willing to take the chance of litigation with the plaintiff, rather than to change from the infringing conveyor to others that are now suggested as standards of comparison."

[3] The defendant further complains that the accountant in his report, and the master and the court in reviewing the evidence, not being able to segregate the savings attributable to the particular elements of the invention, took the savings in the department in which the invention was used, and thus included savings that could not in any proper sense be attributable to the use of the invention. If this be true, the authorities warrant it. Westinghouse v. Wagner, 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222. The defendant, with notice that it was about to infringe in the beginning and with the suit pending against it, and in defiance of the decree of the trial court finding the patent valid and infringed and ordering an accounting, continued the infringement, and after the affirmance by this court destroyed certain records, failed to comply with rule 63, denied that there were any savings, and threw obstructions in the way of the accounting. Under such circumstances the defendant cannot complain of the inability of the plaintiff to accurately segregate the savings attributable to the invention alone from those shown in the department in which it was used. This was the view taken by the master in adopting the larger amount as shown by schedule A, but the court favored the defendant by adopting the smaller amount.

[4] The plaintiff also complains of the decree and has filed seven assignments of error. Upon the hearing Nos. 3, 4, and 6 were withdrawn, and plaintiff's counsel then stated that his only contentions were that the court should not have lowered the amount which the master found and should have allowed punitive damages. The court took the amount shown in schedule B, because he thought it was an approximate apportionment of the savings. This view is supported by the fact that, while in other respects B is substantially identical with A, there is included in A and left out of B two considerable items which appear to have no necessary relation to savings attributable to the use of the particular device. From the history of this case recited above, it appears

that more than 18 years have elapsed since the litigation commenced. For some reason the interlocutory decree by which the validity and infringement of the patent were adjudged was not entered until more than 9 years after the beginning of the suit. In the absence of certain records efforts were made to search the memories of witnesses. Many uncertainties entered into the calculations of the accountants due to the situation and the delays, and we cannot now say that the court erred in choosing the smaller instead of the larger amount.

[5] The assessment of punitive damages is a matter of discretion, and it is not clear, everything considered, that the court abused its discretion in refusing to assess such damages.

The decree is affirmed.