## STANDARD MAILING MACHINES CO. v. POSTAGE METER CO.

District Court, D. Massachusetts. March 21, 1929.

No. 2012.

Franklin F. Phillips, of Boston, Mass., for plaintiff.

Frederick A. Tennant, of Boston, Mass., and Arthur Dowell and Julian C. Dowell, both of Washington, D. C., for defendant.

BREWSTER, District Judge. In the above-entitled infringement suit, the Circuit Court of Appeals having determined that claim 10 of the patent was valid and infringed [9 F.(2d) 19], the matter was referred to a master to take and state an account of the profits and gains which have accrued to the defendant by reason of its infringement of claim 10 of plaintiff's letters patent in suit and of the damages sustained by the plaintiff by reason of said infringement. The master has filed his report, in which he finds that the defendant derived no profits and the plaintiff sustained no damages by reason of the infringement. If material, he finds that $739.11 is a reasonable royalty to be paid by the defendant as a result of the infringement.

The suit is now before the court on exceptions filed by both the plaintiff and the defendant. If the plaintiff's exceptions are overruled, many of the defendant's exceptions become immaterial.

The plaintiff's exceptions, seventeen in number, may be grouped in three classes: (1) Those relating to profits; (2) those relating to damages; and (3) those relating to reasonable royalty.

Of the exceptions of the first class, the first, second, third, sixth, and seventh exceptions relate to sums deducted by the master from gross income. The fourth and fifth exceptions relate to the apportionment of certain items of expenditure between infringing the noninfringing business.

The patented device is a machine for sealing envelopes, wherein a large number of envelopes are placed in a pile in a feeding hopper and fed successively along a moving belt to a moistening device, and then they pass into a receiver or stack, wherein they accumulate in a pile. The novelty of the invention was found to reside in the fact that mechani-

cal pressure used in sealing machines, and known to the old art, was eliminated so that the entire sealing process is performed in the sealing stack. The defendant sold a printing and sealing device which embodied this novel feature of the plaintiff's patent. The defendant was a subsidiary corporation, owned and controlled by the Pitney-Bowes Postage Meter Company, which manufactured envelope sealing machines and also postage meters. The defendant acted wholly as agent for the Pitney-Bowes Postage Meter Company in the sale of its machines and in the leasing of patented devices known as postage meters. The defendant sold Model A, which was a noninfringing machine, and Model B, the infringing device, and also leased, to purchasers of the machines, postage meters, receiving a percentage of the rent paid for the use of the meters.

The sealing machines were sold by the defendant partly through its agents and partly through its branch offices, which it maintained in fourteen of the principal cities throughout the United States.

It was agreed between the parties that the infringing period began July 8, 1924, and ended December 31, 1925. There was no dispute about the number of infringing machines or repair parts sold during that period, nor about the total sale value of these infringing machines and parts. The plaintiff accepted the defendant's figures as to the cost to the defendant of said machines and parts and as to the commission paid to the agents. In addition to these amounts, the master deducted from the gross profits six items of expenses, as follows:

| | |
|---|---|
| Transportation | $   941 57 |
| Installation | 1,302 91 |
| Maintenance of equipment | 3,537 41 |
| Branch office expense (apportioned) | 26,095 24 |
| General running expenses (apportioned) | 13,892 19 |
| Profits to branch managers (apportioned) | 2,170 46 |

The plaintiff objects to all of these items except the last, viz., $2,170.46, profits of branch managers.

The plaintiff concedes that something should be deducted for transportation and installation, but contends that the amounts found by the master are excessive. It argues that nothing should be allowed for maintenance of equipment. Respecting these three items, I sustain the findings of the master. While it may not be possible to determine with mathematical precision the exact amount expended for shipping, installing, and maintaining the infringing machines sold, the relatively small amount allowed by the master satisfies me that he has hit upon a minimum expenditure for these purposes. The plaintiff has not been prejudiced thereby. The principal controversy centers about the remaining two items of expenditure, namely, branch office expense and general running expense, both of which were apportioned by the master between infringing and noninfringing business. The plaintiff attacks the master's finding both as to the amounts of the expenses and as to the rates of apportionment.

In its amended statement of account, filed in response to an order to account, the defendant showed as a selling expense one-half of the amount of commission credited to the several branch offices. This amount, as a direct expense, was not accepted by the master on the ground that the defendant had not shown, by clear and satisfactory proof, the amount of this direct expenditure. Decker v. Smith (D. C.) 225 F. 776. He did take, however, as an expense to be apportioned between infringing and noninfringing business, the sum of $158,826.78, representing the total operating expense of the branch offices less excess of the expenses over commissions earned. The objection of the plaintiff to this finding is that the master did not deduct from this amount, as a direct selling expense, an assumed amount representing 15 per cent. of gross sales through branch offices, or $63,181.15, thus reducing to $95,645.63 the total branch office expense to be apportioned. There was evidence from which the master could well find that this larger amount was actually paid to the branch offices, and that against this amount earned commissions had been credited, and that there had been a deduction to take care of any excess of advances over commissions earned. It also appeared that branch managers employed agents on commissions varying in amount, and that these managers made sales upon which no commissions were paid.

There is something to be said for the contention of the plaintiff that the application of the same rule of apportionment to these selling expenses that would be applied to general overhead, such as rent, salaries, etc., might work injustice to the plaintiff. On the other hand, it is equally possible that the apportionment would not be fair to the defendant. I am rather inclined to the opinion that the master did not err in his method of dealing with these branch office expenditures. His findings upon the whole were more equitable to all parties than they would have been had he deducted from the total branch office expense an arbitrary amount, assumed to represent the commissions on branch office sales, which he had previously disallowed because not definitely proved.

If the question of profits depended upon the amount of the branch office expenses, it might be necessary to give the question further consideration; but if we adopt the proportions employed by the master in allocating these disputed items of expenses, there will be no profits, even if we accept as correct plaintiff's figures regarding the amounts of the expenses to be allocated.

The controversy, therefore, must turn largely upon whether the apportionments by the master can be approved. 16.43 per cent. of the branch office expenses were found by the master to be attributable to infringing business. The evidence showed that all business, including meter rentals through branch offices, was $86,395.04, of which $14,201.22, or 16.43 per cent., related to the infringing machines. Respecting the general running expenses, the master found that 7.48 per cent. should be allocated for the meter business, and that 20.93 per cent. of the balance should be apportioned to the infringing business. The plaintiff, however, contends for a different apportionment of the amounts of both the branch office expense and the general running expense. It would have 50 per cent. of these expenses allocated to the meter business and 20.93 per cent. to the infringing business. It was established by the evidence that the total business of the defendant during the infringing period was $1,163,874.88. In this amount was included meter rentals aggregating $87,000, or 7.48 per cent. of the total business. This was the percentage which the master used in apportioning the general expenses to the meter business. There is nothing to be found in any statement of account which justifies the plaintiff in seeking an allocation of 50 per cent. The argument is based largely upon a statement by the vice president of the defendant company, who was also general manager of the Pitney-Bowes Postage Meter Company, who during his direct examination stated that their business was twofold—selling machines and renting meters—that he thought they were both about of equal value, and that he was as expectant of making profits on one as on the other. There is an important reason why this testimony cannot be accepted as an adequate basis for a finding that the expenses incurred during the period of infringement should be attributed equally to meter business and to the selling of machines, and that is that it was merely a statement of expectation and not a statement of fact. The leases were all for an indeterminate period, were subject to cancellation on short notice by either lessor or lessee, and

what revenue would be derived from them in the future was wholly a matter of conjecture. The master was quite right in refusing to thus indulge in speculation. Muther v. United Shoe Machinery Co. (D. C.) 21 F.(2d) 773; Computing Scale Co. v. Toledo Computing Scale Co. (C. C. A.) 279 F. 648.

In resorting for his proportion to the amount of the total business for the infringing period and the total amount of meter rentals accruing to the defendant during the same period, he was resorting to facts definitely proved by the evidence. These facts furnished the only tangible basis upon which he could proceed. To attribute to the meter business 50 per cent. of the expenditures is to arrive at a result which is not warranted by the evidence before him. Moreover, it must be conceded that a proportion based upon a total meter business during the infringing period of $86,000 was favorable to the plaintiff, when we contemplate that during the infringing period the defendant only leased 700 meters. This would mean that, conservatively estimated, over $60,000 of the $86,000 came from rentals of machines put out on lease prior to the infringing period. I am satisfied that the master's finding respecting the proportion of expenses to be allocated to the infringing business should not be disturbed.

The result of this conclusion is that the master did not err in finding and reporting that the plaintiff has not proved that any profits had accrued to the defendant by reason of the defendant's infringing business. This effectually disposes of the first eight exceptions.

In view of the foregoing, the ninth exception, relating to the alternative finding of the master that 15 per cent. of any profits should be allocated to the patented features, becomes immaterial.

We now come to the exceptions of the second class, namely, those that deal with the question of damages. These are exceptions Nos. 10 to 14, both inclusive. They relate to certain conclusions of law and findings of fact upon which the master bases his statement "that plaintiff has not proved that it has sustained any damage by reason of defendant's infringement of Claim 10 of the plaintiff's Letters Patent in suit." It appears from the report that the plaintiff was in the market with two devices, one known as a "sealer" and the other as a "postal permit printer and sealer." The master finds that the plaintiff lost no sales of the sealer because of the marked difference in price and function between it and the defendant's de-

vice. They were not competitive devices. This was a finding of fact, entirely warranted by the evidence. Respecting the postal printer and sealer, this in price and in function more nearly resembled the infringing device; but the master ruled that the plaintiff was required to establish the fact that it was in the market during the infringing period, prepared to sell machines embodying the patented invention, and that the postal permit printer and sealer did not embody the patented invention, in that it employed mechanical sealing means between the moistening means and the stack.

■ Plaintiff's exceptions raise two questions, one of law and one of fact; the former being whether plaintiff can recover damages for loss of sales of machines which do not embody the patented invention, and the question of fact is whether the postal permit printer and sealer did embody the patented invention. As to the legal proposition involved, there seems to be both reason and authority to support the rulings of the master. If the plaintiff was in the market in competition with the defendant with a machine that did not embody the patented invention, it is difficult to understand how the plaintiff had been injured by the acts of the defendant. That under such circumstances the plaintiff cannot recover damages on the theory of lost sales is the view entertained by the court in the Second circuit in Metallic Rubber Tire Co. v. Hartford Rubber Works Co. (C. C. A.) 275 F. 315; Walker on Patents, § 566.

■■ The plaintiff contends that its printing and sealing machine did, in fact, embody the invention. A demonstration both to the master and to the court showed that as a common commercial type of envelope passed through the machine a small portion of the flap was engaged by the feeding rollers and pressed into contact with the back of the envelope. It is claimed that this was an accidental result rather than an intended sealing function, and that many envelopes would pass through without receiving any pressure whatever; or, in other words, the claim is that the mechanism did not function to seal the flap. The master, however, has found as a fact that it did so function and that the plaintiff's machine did not embody the patented invention. This finding of fact will not be disturbed unless it is wholly without support. I am unable to say on the record that his findings were clearly wrong. The master in his report stated: "Moreover there were on the market several sealers other than plaintiff's sealer and defendant's printer and sealer and defendant's customers might have purchased one of such other sealers." His finding that there was no direct evidence that any purchaser would have bought from plaintiff if defendant had not infringed was justified. Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398.

The remaining question raised by the plaintiff's exceptions is whether a case is presented proper for the application of the rule of reasonable royalty. The master, in his report, apparently proceeds upon the theory that the plaintiff would be entitled to nominal damages only.

■ The general rule seems to be well settled that, where the court has declared a patent valid and infringed and the plaintiff's exclusive right has been invaded, the normal measure of damages is the value of what was taken. Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., supra; Walker on Patents (5th Ed.) § 566a. There are, however, exceptions to this rule. Thus if, upon an accounting, it appeared that the patent was without real commercial value or that its contribution to the art was negligible or insignificant, plaintiff would be entitled to nominal damages only. American Telephone & Telegraph Co. v. Radio Audion Co. (D. C.) 5 F.(2d) 535. I am of the opinion that the case at bar falls within the general rule rather than the exception. This court, as well as the Circuit Court of Appeals, has regarded the invention as a meritorious one, contributing something to the art. It is clearly established on the record that the defendant encroached upon the plaintiff's monopoly and that it used its patented device unlawfully during the entire period of infringement. I am not able to say on the record that the plaintiff has sustained only nominal damages. Being unable to show these damages measured by lost sales, or lost royalties, the court may properly award damages measured by a reasonable royalty. Hunt Bros. Fruit-Packing Co. v. Cassiday (C. C. A.) 64 F. 585. This reasonable royalty the master has found to be equivalent to the expense of converting the infringing device into an equally efficacious, noninfringing device.

■ In his report, on page 28, the master states: "While it does not appear in this case that 'complainant has suffered damage from the infringement,' * * * it may be that the Court will disagree with me on this and if so the Court might desire to have my views as to what a 'reasonable sum' would be." Again, he states that a reasonable royalty in this case would be the amount saved by the defendant by its use of the

invention, and finds that $2.13 per machine is the amount thus saved, which, for 347 machines, would give $739.11 as a reasonable royalty.

I agree with the master in his finding respecting the amount of such reasonable royalty, and I approve of his method of. arriving at it. See Egry Register Co. v. Standard Register Co. (C. C. A.) 23 F.(2d) 438.

So far as the master incorporated in his report a definite finding and ruling that the plaintiff was entitled only to nominal damages, such finding and ruling are disaffirmed, and the plaintiff's fourteenth exception is sustained.

In all other respects the master's report is affirmed, and all other exceptions of the plaintiff are overruled.

The defendant's exceptions are overruled. Many of them, in view of the conclusions above reached, have become unimportant.