LEVIN BROS. v. DAVIS MFG. CO. et al.
No. 9944.

Circuit Court of Appeals, Eighth Circuit.
July 5, 1934.

Frank A. Whiteley, of Minneapolis, Minn., for appellant.

A. C. Paul, of Minneapolis, Minn., for appellee.

Before STONE and GARDNER, Circuit Judges, and JOYCE, District Judge.

STONE, Circuit Judge.

This is an appeal from a decree awarding profits in a patent infringement accounting case.

The main matters presented here are: I, failure to apportion profits; II, exclusion of certain items of manufacturing expense; III, wrongful apportionment of overhead expense; and IV, assessment of costs of the accounting against the appellant.

## I. Apportionment of Profits.

The master determined that there should be recovery for the entire profits made by appellant from sale of the infringing articles. The claim of appellant is that the infringing articles sold by it contained valuable features not included in the patented article and which greatly added to its sale value and for which an apportionment of profits to it should be made. As to this contention the master found that there were such additional features which added to the sales value of the articles sold but that appellee had shown impossibility of apportionment because of confusion of profits by appellant and that appellant had failed to sustain the burden of introducing evidence upon which an apportionment could be made.

The patented article was a combination patent for a davenport bed. When this court sustained the patent (Davis Manufacturing Co. v. Levin Brothers, 8 F.(2d) 972), it declared [pages 973, 974 of 8 F.(2d)] that the novel feature consisted of a so-called "apron," which, effectively concealing that the davenport was also a bed, was valuable mainly for this artistic effect which increased the desirability and salability of the article. The additional features relied upon by appellant consisted of a clothes box and bed springs in the extension section of the davenport; and a feature which permitted the apron to be detached from the main portion of the daven-port thus allowing the two sections to be separated and used as twin beds. The question of the apportionment here is therefore division of the profit between the features added by appellant and the rest of the davenport. Obviously, this is a puzzling matter to which must be applied the rules of apportionment declared by the Supreme Court in Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653. Those rules, as set forth in pages 616 to 622, inclusive, of 225 U. S., 32 S. Ct. 695, to 697, are as follows: (1) That the burden is on the patentee to prove profits and without more he is entitled to all of the profits made from sale of the infringing device; (2) the defendants may then assume the burden of showing that part of the profit is due from features other than those covered by the patent; (3) when such added features contributing to profit are shown, it then devolves upon the patentee to prove either what part of the entire profit should be apportioned to the infringing part of the device and what part to the added features, or to prove that the determination of such apportionment and of the respective profits has been so inextricably commingled and confused that it is impossible to make an apportionment; (4) if the patentee introduces proper evidence to show such confusion, it then devolves upon the infringer to introduce evidence of a proper apportionment.

Here appellee proved profits after which appellant proved that part of the entire profit was from other features added by it and, thereafter, appellee introduced positive evidence showing such confusion as to make apportionment impossible. In this situation and under the above decision the burden devolved upon appellant to establish a proper method of apportioning these profits. A failure to do this would result in a loss of all profits by it because, as said by the Supreme Court in the above case, it must be borne by him since he is the wrongdoer and it is his acts which have wrought the confusion preventing the apportionment. The evidence here sustains the finding of the master that appellant has failed to sustain this burden of proof and, so failing, appellee is entitled to the entire profit from the infringing davenports, even though they included these added features.

## II. Manufacturing Cost Items.

This contention has to do with certain items of manufacturing expense which appellant claims were excluded from the estimate of cost of manufacture. None of these items

are shown upon the original cost cards made by appellant at the time and in connection with the manufacture of these davenports. The master examined these items with great care, treating them not only in an original report but later in a supplemental report. His reasoning for such exclusions seems sound and his reports were confirmed by the trial court. Determinations of fact matters by a master which are confirmed by the trial court should not be overthrown on appeal except on the clearest showing of mistake. Hy-yu-tse-mil-kin v. Smith, 194 U. S. 401, 412, 24 S. Ct. 676, 48 L. Ed. 1039; Munn v. Des Moines Nat. Bank, 18 F.(2d) 269, 271 (C. C. A. 8). That showing is lacking here.

### III. Overhead.

This contention has to do with the apportionment of overhead in the expenses. Appellee contended that no overhead should be included in the expenses because the manufacture of these davenports was an added line to a large business—being about two percent of the entire business—and the addition of this line had not added to the overhead expense. Appellant contended that the entire overhead should be included (divided on a percentage basis between the sales of the davenports and the entire sales business). Recognizing that each of these theories was supported by authority but deeming neither to be just if applied throughout to the items of overhead in this case, the master undertook a division of the items of overhead into those which were not affected by adding the davenport business and those which were. Such division appears in his findings and his memorandum. This division evinces great care and consideration. To such overhead as was affected by the manufacture and sale of the infringing davenports, he applied the percentage of davenport sales to total sales of all products.

The parties make the same contentions here that they did before the master. The master made a very painstaking and careful division of the items of overhead. The appellant secured all it was entitled to in this apportionment and its contention here is unsound.

■ The patent law gives the right to recover all profits from an infringement. "Profit," as so used, is no mysterious phrase. It means simply all financial gains. Such gains are the difference between expenditures made to produce and sell the infringing articles and the receipts therefrom. Obviously, the application of this rule—the ascertainment of such actual profits—will occasion separate accounting and fact problems in each case because items entering into cost or into receipts will differ. Always, however, the task is to see that the patentee recover every dollar of advantage realized by the infringer from the infringement and no more. No fast and hard rules should or can be stated to guide application of this general rule to the infinite variety of fact situations developed in different cases. A good illustration of how various items of fact must be handled in a practical way is the case, in this Court, of Flat Slab Patents Co. v. Turner (C. C. A.) 285 F. 257. Because a recurring item, like overhead, is handled a certain way in a given case such is no statement of a rule of law that the same item must be similarly dealt with in all cases. The "rules" contended for by the parties here are not rules of law. They are but illustrations of applications of the above single broad rule to different fact situations.[1]

---

[1] The cases cited by the parties or by the master are: The Flat Slab Case, supra; Standard Mailing Machines Co. v. Postage Meter Co. (D. C. Mass.) 31 F. (2d) 459; Krentler-Arnold Hinge Last Co. v. Leman (D. C. Mass.) 24 F.(2d) 423; Id., 284 U. S. 448, 52 S. Ct. 238, 76 L. Ed. 389; Starr Piano Co. v. Auto Pneumatic Action Co., 12 F.(2d) 536 (C. C. A. 7); Riverside Heights Orange Growers' Ass'n v. Stebler, 240 F. 703 (C. C. A. 9); Western Glass Co. v. Schmertz Wire Glass Co., 236 F. 744 (C. C. A. 7); Id. (C. C. A.) 226 F. 730; N. K. Fairbank Co. v. Windsor (C. C. W. D. N. Y.) 118 F. 96; National Folding-Box & Paper Co. v. Dayton Paper-Novelty Co. (C. C.) 95 F. 991; Societe Anonyme v. Western Distilling Co. (C. C. E. D. Mo.) 46 F. 921; Nelson v. J. H. Winchell & Co., 203 Mass. 75, 89 N. E. 180, 23 L. R. A. (N.

S.) 1150; Regis v. H. A. Jaynes & Co., 191 Mass. 245, 77 N. E. 774.

Among the host of other cases involving various fact situations in measurement of profits are: Gould's Mfg. Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987; Cofield Motor Washer Co. v. Wayne Mfg. Co., 255 F. 558, this court; Doten v. City of Boston, 138 F. 406 (C. C. A. 1); Hemolin Co. v. Harway D. & E. Mfg. Co., 166 F. 434 (C. C. A. 2); Conroy v. Penn Elec. & Mfg. Co., 199 F. 427 (C. C. A. 3); Continuous Glass Press Co. v. Schmertz Wire Glass Co., 219 F. 199 (C. C. A. 3); Superior Mach. Tool Co. v. Cinn. Lathe & Tool Co., 284 F. 267 (C. C. A. 6); Peter Schoenhofen Brewing Co. v. Alvey-Ferguson Co., 14 F.(2d) 945 (C. C. A. 7), certiorari denied 273 U. S. 743, 47 S. Ct. 336, 71 L. Ed. 869; Barber Asphalt Paving Co. v. Standard Asphalt & Rubber Co., 30 F.(2d) 281, (C. C. A. 7).

█ █ It is quite obvious that an inclusion, in all cases, of all overhead would be very unfair to the patentee. The profit on the patented articles is the difference between the cost of producing them and the price received for them. To put into this cost an overhead expense, in nowise caused thereby, would be an improper inclusion. It often happens that overhead expenses are applicable to and should be spread over the entire business but where a business is established and in operation and another line is taken on without increase of overhead expenses it is just to the patentee that the actual situation be applied and none of such overhead be charged as an expense of the added line except as it participated in manufacture or sale of the infringing article. The statutes for the protection of patentees have properly gone quite far to take away from an infringer every vestige of gain through his wrongful act whether such be manifested by actual income or by decrease of expense items. On the other hand, this theory of not allowing overhead where it has not been increased is of narrow application and not to be extended for it is manifest that every item of expense which should properly be included in the manufacture and sale of the infringing article should be so included in ascertaining the real profit thereon. Very sensibly here, the master divided the items of overhead into those which could not be and were not increased by adding this infringing line to appellant's business and into those which had a direct connection with the manufacture and sale of the infringing davenports. The former he excluded and the latter he included in the expense items of the accounting.

## IV. Costs of Accounting Case.

█ The master recommended that two-thirds of the costs of the accounting proceeding be paid by appellant and one-third by appellee and that appellee be awarded an allowance for expenses occasioned it by certain reprehensible actions of appellant in connection with the accounting. The court modified these recommendations of the master by requiring payment of the entire costs of the accounting by appellant and denying the recommended compensation to appellee. Apparently, this change was intended substantially to cover the situation presented by the two recommendations of the master and the denial of compensation is expressly stated to be because of the change in imposition of costs. The reasoning of the master in his division of costs is set forth at length in the record. It arises out of the palpable attempt of the appellant to introduce false cost cards and cutting cards. The obvious purpose of this movement was to accentuate the costs of manufacture, thus reducing the profits materially. It is fair to state that appellant's counsel knew nothing of this highly questionable action. While there were other issues (such as overhead) which had nothing to do with these cards and costs of manufacture yet it is true that these false cards occasioned a very considerable part of the effort and evidence in the accounting. They were so far out of line with what appellee knew from its own experience should be the costs of manufacture that a great deal of evidence was put in to meet these cards and to attempt to overthrow their figures. It was only thereafter when the master, on appellee's motion, was about to have an accountant go through the books of appellant in connection with this manufacturing cost that appellant suddenly and conveniently found the original cost and cutting cards which had been in its files all of the time. All of this labor and effort and expense was caused by this reprehensible attempt of appellant to deceive. Obviously, this created a situation for which the appellant should pay in the costs of the accounting. At the same time it occasioned entirely unnecessary and unwarranted expense upon appellee which, there is no reason in equity or justice, it should be required to bear. We see no objection in either the method of the master or that of the court in handling this dual situation and either method works out substantial justice. It is well for litigants to learn that it is not to their profit to introduce false evidence in the federal courts. The order of the court in this respect is sustained.

## Conclusion.

There are some other matters discussed by appellant which have received careful examination and consideration but in which no merit has been found. It seems necessary to discuss only those determined above.

The decree is affirmed.