PAIRPOINT MANUF'G CO. v. ELDRIDGE CO.

(Circuit Court, D. Connecticut. January 1, 1896.)

No. 775.

1. DESIGN PATENTS—INFRINGEMENT—NOTICE OF PATENT.

The owner of a design patent, who fails to mark "Patented" the articles sold by him, until after the design is copied by another, has the duty of alleging and the burden of proving that the latter was notified of the infringement, and continued the infringement thereafter. Dunlap v. Schofield, 14 Sup. Ct. 576, 152 U. S. 244, followed; Falk v. Engraving Co., 48 Fed. 262, distinguished.

2. SAME—EVIDENCE OF NOTICE.

Testimony of a member of an association which controlled the price of certain manufactured articles, and of which complainant was also a member, that in visiting defendant's factory he noticed that an infringing article was being made there, and told defendant of complainant's patent, whereupon defendant said he knew the article was patented, held insufficient to show notice of the infringement, where the action of the witness was neither authorized nor ratified by complainant, and the conversation was denied by defendant.

This was a suit by the Pairpoint Manufacturing Company against the Eldridge Company for injunction, and to recover the statutory penalty for infringement of a design patent.

Edward S. Beach, for complainant.

Hugh O'Flaherty, for defendant.

TOWNSEND, District Judge. This suit was argued at final hearing upon bill, answer, replication, and proofs. The bill alleges infringement of patent No. 20,714, granted May 12, 1891, to Max Bremer, assignor to complainant, for a design for a casket handle ear, and claims the statutory penalty and treble damages. The answer denies patentable novelty; alleges that the ears manufactured by complainant were not stamped or marked "Patented"; that defendant, when it infringed, had no notice or knowledge of the existence of said patent during the time of its manufacture and sale of the infringing ears, and that upon receiving notice thereof it forthwith stopped such manufacture and sale, and offered to settle for all its profits, and complainant's damages by reason thereof; and that said offer was refused. It is unnecessary to consider the question of patentable novelty. The evidence in regard to knowledge is substantially as follows: The complainant, 10 months after the issuance of the patent, sold to the Bristol Manufacturing Company three packages of goods containing certain of the patented ears. None of said ears were stamped "Patented," and there was no mark on the packages in which they were shipped to indicate that the contents were patented. Said Bristol Company delivered one of said ears to the defendant corporation, among other similar handles, in order that defendant might manufacture a casket handle of said design for said Bristol Company. The defendant manufactured and sold 5½ dozen of said ears. It commenced said manufacture about February 23, 1893, and stopped manufacturing, and made its last shipment thereof, on May 12, 1893, at about which time it heard that complainant company claimed a patent for said design. On May 25, 1893, the complainant notified the defendant that it owned the patent in suit, warned it to cease infringement forthwith, and demanded that it account and settle for all infringing ears made or sold by it. The defendant denied previous knowledge of the patent, agreed that it would not thereafter manufacture or sell any infringing ears, and offered to show its books to complainant, and to settle for past infringement. This offer was not accepted, and suit was brought for damages and penalty as aforesaid.

Complainant claims that "the burden of proof of want of knowledge must be on the defendant, and be unequivocally sustained by the defense," and in support of this claim cites Falk v. Engraving Co., 48 Fed. 262. But that case does not support any such claim in circumstances like those here presented. There the court found that whether a copyrighted photograph was without the statutory notice when it came into the possession of the infringing defendant was doubtful, but that it did not appear that it was

without such notice when it left complainant's possession, and held that the defendant, in order to relieve himself from liability, must show this fact. In the case at bar, defendant has proved by the testimony of several witnesses, and by complainant's admission, that it did not stamp its ears "Patented" until after the sale of the ear which defendant copied, and that, when said ear left the complainant's factory, it was not stamped with the statutory notice.

The complainant has not alleged that its ears were in fact marked "Patented," and the evidence shows that they were not so marked, at the date of said sale to the Bristol Company. But complainant further relies upon the claim that the defendant "was duly notified of the infringement." If said patent is valid, this is the single point in the case. The only pertinent evidence in support of said claim is that of one Linus H. Williams, a member of an association or syndicate of which complainant is also a member, which controls prices of casket hardware among its members. Williams testified as follows:

"I was in Hartford in March, 1893, and went into Cook & Whitmore's, and there met Mr. Eldridge, and he invited me down to his factory. In showing me through the works, I saw this handle in question in the process of manufacture. I said to Mr. Eldridge that that was a handle patented by the Pairpoint Manufacturing Company, and he would get into trouble, as Mr. Allen had told me that they would prosecute any one that manufactured it. He made some remark about his knowing that it was a patented handle, and there the matter dropped. Int. 9. On what day in March, 1893, was this conversation? Ans. March 27, 1893. Int. 10. Am I correct in understanding that Mr. Eldridge told you on that day that he knew that the ear in question was patented? Ans. He said, when I told him that, that he knew it was."

This conversation is denied by defendant. The witness is interested. He volunteered the information in a letter to complainant, and came voluntarily from Ohio to testify. The alleged statement was mere indefinite hearsay, reported to one of the officers of the defendant corporation by a third party. It was neither authorized nor ratified by complainant. Manifestly, this evidence is insufficient. I understand the law to be settled, since Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, that in such a case the complainant is bound to prove, as a condition precedent to his right to recovery, "that the defendant was notified of the infringement and continued after such notice" (Rev. St. § 4900), and that, if the articles "are not duly marked, the statute expressly puts upon him (the plaintiff) the burden of proving the notice to the infringers, before he can charge them in damages. By the elementary principles of pleading, therefore, the duty of alleging and the burden of proving either of these facts is upon the plaintiff." Furthermore, this is a suit for a penalty provided for applying a patented design, "or any colorable imitation thereof, to any article of manufacture for the purpose of sale," or for selling such article, "knowing that the same has been so applied." This language is suggestive of an element of willfulness in such appropriation, and as is said in Dunlap v. Schofield, supra, "The reasons for holding the patentee to allege and prove either such

knowledge or notice to the public or to the defendant, from which such knowledge must necessarily be inferred, are even stronger, in a suit for such a penalty, than in a suit to recover ordinary damages." It is clear, therefore, that at most complainant could only ask for an injunction against further infringement. In view of the laches of complainant, and its failure to show any willful infringement, and further, as defendant, not being originally a wrongdoer, voluntarily desisted as soon as duly notified, I do not think there is any present occasion for the issuance of an injunction. Let a decree be entered dismissing the bill, with costs.