## MUTHER v. UNITED SHOE MACHINERY CO.

District Court D. Massachusetts. September 15, 1927.

### No. 743.

**1. Patents ⬡319(1)—Established royalty measures complainant's damages only against infringer who does the things for which the royalty is paid.**

A complainant's damages for infringement can be measured by an established royalty only when the royalty is paid for a license to do the things which defendant does without a license.

**2. Patents ⬡319(1)—Uniform license fee held not established as against infringing manufacturer, by a royalty charged to single licensee to make and lease patented article.**

A royalty charged to single licensee to make and lease the patented article *held* not to establish a uniform license fee as a measure of damages against an infringing manufacturer which was not a user, whether it sold or leased its product to users.

**3. Patents ⬡312(3)—Complainant in patent infringement suit must clearly establish his damages from lost royalties or profits.**

Complainant in patent infringement suit has the burden of establishing by clear and definite proof his damages resulting from lost royalties or lost profits.

**4. Patents ⬡322—Master on reference is without power to award increased damages for infringement (35 USCA §§ 67, 70).**

On reference to a master to find and report damages and profits to which complainant is entitled from an infringer, it is not his province to award an increase of damages under Rev. St. §§ 4919, 4921 (35 USCA §§ 67, 70 [Comp. St. §§ 9464, 9467]).

**5. Patents ⬡319(1)—Damages for infringement of patented article, consisting of combination of elements in single tool, none of which are covered by any other patent, held measured by established reasonable royalty.**

Where there is an established royalty for use and a reasonable royalty is found for the right to manufacture and sell a patented article, which consists of a combination of elements in a single tool, none of which elements are covered by any other patent, such royalty measures damages for infringement by manufacture and sale of the tool as an entirety.

**6. Patents ⬡319(4)—Where damages for infringement are computed on reasonable royalties, interest is recoverable from date royalties should have been paid.**

Where damages for infringement are computed on reasonable royalties, interest is recoverable from the date royalties should have been paid.

**7. Patents ⬡222, 227—Marking of article or serving defendant with notice is essential to recovery of damages for infringement (35 USCA § 49).**

That defendant had actual notice of infringement does not entitle complainant to recover damages for infringement prior to suit, where he did not mark the article nor serve defendant with notice as required by Rev. St. § 4900 (35 USCA § 49 [Comp. St. § 9446]).

**8. Patents ⬡319(3)—Complainant held entitled to increased damages of 25 per cent. for willful infringement (35 USCA §§ 67, 70).**

Complainant, under evidence that infringement was willful, deliberate, and intentional, *held* entitled to increased damages under Rev. St. §§ 4919, 4921 (35 USCA §§ 67, 70 [Comp. St. §§ 9464, 9467]), and damages increased 25 per cent.

**9. Patents ⬡327(9)—Refusal to admit record and opinion in another suit between same parties not involving plaintiff's invention covered by patent in instant suit held proper.**

In suit for patent infringement, refusal to admit as evidence record and opinion in suit between same parties to compel the issuance of a patent, where the plaintiff's invention covered by the patent in instant suit was not involved, *held* proper.

In Equity. Suit by Lorenz Muther against the United Shoe Machinery Company. On exceptions to report of master of damages and profits to which complain-

ant is entitled. One exception of defendant sustained; all others overruled.

See, also, 7 F.(2d) 954.

Francis J. V. Dakin and Edward F. Mc-Clennen, both of Boston, Mass., for plaintiff.

Emery, Booth, Janney & Varney, A. D. Salinger, and Hector M. Holmes, all of Boston, Mass., for defendant.

BREWSTER, District Judge. This is an infringement suit based on letters patent No. 1,112,643, issued to plaintiff October 6, 1914, on his application filed January 31, 1914. The bill of complaint was filed August 19, 1916.

The patent involved has already been held to be a valid patent by Judge Anderson, whose decision was affirmed by the Circuit Court of Appeals. 288 F. 283.

The proceedings were referred to a master "to take and report to the court an account of" defendant's profits "and to take and report an account of any and all damages to which the plaintiff may be lawfully entitled, which plaintiff has sustained by reason of" defendant's infringement of claims 1, 2, and 3 of said patent.

The claims are as follows:

"1. A device for setting eyelets in one of a plurality of layers of a flexible material, said device comprising an anvil and a co-operating setting device having a projecting setting shoulder and a contracted portion above the setting shoulder.

"2. An eyelet setting device consisting of means for setting eyelets in one of the outside layers of a plurality of layers of material, comprising a lower anvil, an eyelet positioning device and an upper setting device having a slightly projected setting shoulder and a contracted portion above the setting shoulder.

"3. The combination of a punching and eyelet setting device for setting eyelets in one or more of the layers of a plurality of layers of material, comprising a punch and a setting device having a projecting setting shoulder and a contracted portion above the setting shoulder."

The plaintiff offered no evidence of the gains and profits which defendant derived by reason of the infringement, but the master finds and rules that the plaintiff is entitled to damages sustained by reason of the infringement in the sum of $214,271.20, of which sum $154,271.20 is the amount of the damages ascertained by the application of the rule of reasonable royalty and $60,000 is the amount of the interest added by way of damages.

To the action of the master both parties have objected and excepted. The case is now before this court on the exceptions.

The patent relates to an eyelet setting tool used by shoe manufacturers in the setting of blind, or invisible, eyelets in the shoe upper. A shoe upper is ordinarily made up of a number of layers of material stitched together. The lacing holes are punched through all the layers. In this hole the eyelet is inserted and clinched. In blind eyelet setting the eyelet is inserted from the inside of the shoe and extends through a portion, but not all, of the layers. It is clinched beneath the outer layer of material so that the clinched eyelet is not visible on the outside of the shoe. Plaintiff's invention was designed for use in conjunction with shoe machines. The structural elements of the tool and the function of each were, first, a restricted or upsetting shoulder which engages the upper end of the eyelet and spreads it outwardly and down upon the subjacent layers of the material; second, a contracted portion or recess above the upsetting shoulder which allows the outer layer to spring back after the shoulder has passed through it, so that it would not be caught in the prongs of the eyelet in the clinching process; and, third, the regulating abutment or secondary shoulder which prevents the advancing eyelet barrel from pushing all the layers up over the setting shoulder.

Since the plaintiff filed his application, the defendant has acquired patent rights covering the generic claims for the abutment feature, and it has also been successful in litigation in the federal courts of New Jersey in establishing its rights to the restricted upsetting shoulder generically. The plaintiff owns the combination of the setting shoulder and the recess. The plaintiff has also acquired the Glines patent, No. 1,110,258, issued September 8, 1914 covering a particular form of adjustable abutment. The master finds that during the whole of the infringing period "the use of the setting shoulder and of the abutment, apart from the combination with the recess, was free to the world."

The plaintiff began to put his blind eyelet setting device on the market in March, 1914. It was the first tool of the kind on the market, and met with immediate favor in the shoe trade. Beginning at that time plaintiff granted licenses to shoe manufacturers for the use of the patented tool; the licensee paying as royalty the sum of 2 cents per dozen pair of low shoes having not to exceed six

eyelets on a side, and 3 cents per dozen pair on all boots and shoes having more than six eyelets on a side. The licensed tool was furnished free of charge, and was to remain the property of the plaintiff. This royalty was not increased or decreased during the infringing period, and the master finds it to be an established royalty for use of the invention.

The earlier licenses conferred the right to use punching and setting devices, in the process known as blind eyeletting, under any inventions or letters patent that plaintiff might thereafter obtain giving him a right to grant such licenses.

Early in 1915 a revised form was adopted licensing under letters patent No. 1,110,258 (Glines patent) and No. 1,112,643 (Muther patent). The licensees used the tool in Peerless rapid eyelet setting machine, manufactured by the Peerless Machine Company. The plaintiff owned substantially all of the capital stock of the Peerless Machine Company. This corporation leased its machines, and under the terms of the lease the lessee could only use the machine with eyelets furnished by the lessor. But the machine company also sold outright the machine, with no such conditions attaching.

The defendant is a manufacturer of shoe machinery, and manufactured and distributed among shoe manufacturers infringing blind-eyeletting punches. No royalties or compensation in the nature of rent was paid defendant for the use of such infringing devices. The benefits accruing to it from its infringement were the profits derived from the sale of eyelets and the general benefits resulting from supplying the customers with suitable instruments for blind eyeletting.

Plaintiff only granted one license to make and lease the patented tool. This was to the Atlas Tack Company, which gave it the right to manufacture and lease the device, charging users the same royalties which plaintiff charged, one-third of the royalties so charged to be paid to plaintiff. The master held, and properly so, that this single license was "insufficient to establish a uniform license fee as a measure of damages against a manufacturer of the infringement who was not a user." He therefore found no established royalty for the right to manufacture and sell or lease. The master also was unable on the evidence to determine the extent of plaintiff's damages on the basis of lost royalties, and regarded the case as one in which the rule of reasonable royalty might properly be invoked. He proceeded to find such reasonable royalty to be two-thirds of the established

royalty for use, with the result that the amount of plaintiff's damages on that basis was determined as follows:

The royalties of 2 and 3 cents per dozen pair was found to be the equivalent of 5.12 cents per 1,000 eyelets, and, it appearing that 4,519,664,179 blind eyelets had been set by the infringing tools, the established royalty for use on this number would be $231,406.80. Two-thirds of this amount, or $154,271.20, was found to be the amount of the reasonable royalty.

It also appeared from the record that of the total number of eyelets set with the use of the infringing punch 1,768,172,779 were set by users who were licensed by plaintiff or by the Atlas Tack Company.

Neither party is wholly satisfied with these findings respecting the amount of plaintiff's damages. The plaintiff contends that the proper measure of damages is the established royalty for use, inasmuch as the defendant always owned the infringing devices and authorized, approved, and urged their infringing use by the licensees, thus invading the plaintiff's exclusive right to use, and not merely to manufacture and to sell.

[1, 2] To adopt plaintiff's contention is to put the defendant, for the purpose of fixing damages, into the same category with shoe manufacturers. Obviously the defendant, as a manufacturer of shoe machinery, does not belong to that class. It is stated that a plaintiff's damage for infringement can be measured by an established royalty only when the royalty is paid for a license to do the things which a defendant does without a license. Walker on Patents (5th Ed.) § 555; Colgate v. Western Electric Mfg. Co. (C. C.) 28 F. 146. The only license granted by plaintiff to do the things the defendant did was to the Atlas Tack Company, and the master properly held this single instance insufficient to establish a fixed royalty as against a manufacturer of the device. Walker on Patents, § 557; Vulcanite Paving Co. v. American Artificial Stone Pav. Co. (C. C.) 36 F. 378.

Undoubtedly the exclusive right to control the use of the invention was a valuable right, and I will concede that there is merit in plaintiff's argument that the defendant's course of conduct seriously interfered with this exclusive right and caused pecuniary loss to plaintiff, but the same argument could be advanced if defendant manufactured and sold the device. Its act of invasion was to furnish the blind-eyeletting tool to shoe manufacturers, and it made little difference in its effect on plaintiff's monopoly whether

the shoe manufacturer purchased or leased or otherwise acquired the tool. Infringement by its use constituted an invasion of quite a different character. Colgate v. Western Electric Mfg. Co., supra. I see no ground for any exception to the master's finding that the defendant did not use the patented article.

[3] The plaintiff's second exception is as follows:

"The master should have ruled that the value of what the defendant unlawfully took and converted (whether alone or jointly with the shoe manufacturers) was the value of the plaintiff's exclusive right to use; that is, the opportunity to have others pay him for the use of his invention and the profits on the eyelets naturally going with it to the extent of the infringing use caused and procured by the defendant."

While the language of this exception somewhat obscures its meaning, I read it in the light of the master's report to mean that plaintiff is entitled to recover on a basis of lost royalties, and that the fixed royalty to users correctly represents, or accurately measures, the amount of royalties of which plaintiff was deprived by reason of defendant's infringement, and that to this amount should be added lost profits on sale of eyelets which would have accrued to the Peerless Machine Company but for the infringement.

These claims of the plaintiff might be valid were it not for the fact that the plaintiff has seen fit to share his monopoly with the Atlas Tack Company, which had acquired the right to grant to shoe manufacturers licenses carrying the established royalties and had agreed to pay over to plaintiff only one-third of such royalties.

By assuming that the Atlas Tack Company would have licensed all the infringing users, it is possible to fix a minimum loss, but such an assumption would hardly be warranted. To determine with a reasonable degree of accuracy how many licenses would have been sold by plaintiff and how many by the Atlas Tack Company is impossible on the evidence. The plaintiff carries the burden of proving by competent evidence his damages resulting from lost royalties or lost profits. In determining the extent of such damages, the court may not indulge in conjecture or speculation. The damages must be shown by "clear and definite proof." Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024; Dobson v. Hartford Carpet Co., 114 U. S. 439, 5 S. Ct. 945, 29 L. Ed. 177; Rude v. Westcott, 130 U. S. 152, 9 S. Ct. 463, 32 L. Ed. 888.

The master therefore was warranted in his statement that there was no sufficiently definite evidence on which he could find, or lawfully infer, how much plaintiff lost in royalties by reason of the infringement.

The above applies with equal force to plaintiff's claim to lost profits on eyelets used with the infringing device. Respecting this claim, there is a further element of indefiniteness due to the fact that many shoe manufacturers owned outright their eyeletting machines and were free to purchase eyelets wherever they chose. The refusal of the master to include these profits is amply justified by the lack of "clear and definite" proof of the extent of such losses. It is unnecessary, therefore, to consider the other objections of the defendant which attack the validity of the agreement to use the patented device only on eyelets furnished by the licensor and which assail the right of this plaintiff to recover in these proceedings any profits lost to the Peerless Machine Company.

The plaintiff has also excepted to the refusal of the master to rule that profits made by defendant were recoverable, but, in view of the finding that plaintiff offered no evidence of defendant's profits as such, and proceeded only for damages, this question is not now open to the plaintiff.

[4] The only other of plaintiff's exceptions relates to an increase of damages under R. S. §§ 4919 and 4921 (35 USCA §§ 67, 70 [Comp. St. §§ 9464, 9467]). As I read the order of reference to the master, his duty was to determine (1) defendant's profits; and/or (2) plaintiff's damages. I think the master performed his full duty when he reported, as he did fully, the facts established by the evidence so far as they enlightened the court and assisted it in deciding whether and to what extent the damages should be increased under the statute. No exceptions therefore can lie to the failure of the master to increase the damage.

Plaintiff's exceptions are overruled.

The defendant has filed so many exceptions to the master's report (87 in all) that it is impracticable to consider them separately. Most of them relate more or less remotely to issues that can be dealt with without unduly extending this opinion. These are:

(1) Whether the master was warranted in finding an established royalty for use of plaintiff's invention.

(2) Whether two-thirds of the established royalty for use was a reasonable royalty.

(3) Whether the reasonable royalty should have been computed on eyelets sold by

defendant to those holding licenses granted by plaintiff and by the Atlas Tack Company.

(4) Whether the master erred in including interest by way of damages.

(5) Whether plaintiff can recover for damages sustained prior to bringing this suit.

(6) Whether plaintiff lost his rights of recovery by failure to more diligently prosecute this suit.

[5] 1. As to the established royalty for use, I think it must be conceded that there was abundant proof of an established royalty for the use of the eyeletting punch put out by the plaintiff. But defendant asserts that the royalty was paid for a tool which comprised three distinct and separate inventions, only one of which was the plaintiff's invention, namely, the restricted portion above the setting shoulder; that the royalties were paid for the right to use all three of these inventions; that the burden is on the plaintiff to prove what was paid for the recess as a separate and distinct element; that no evidence was forthcoming to maintain this burden; and that therefore the royalties paid by plaintiff's licensees could not be treated as royalties paid for the use of the invention of the patent in suit.

There is some evidence tending to show that the plaintiff claimed exclusive rights in the upsetting shoulder under an application for a patent which was later refused, and clearly, in the later form of licenses granted, the plaintiff licensed under both his patent and the Glines patent. But the master has expressly found, upon adequate evidence, that during the infringing period both of the other elements were "free to the world."

I can accept as sound defendant's proposition that "licenses granted and royalties paid for the right to employ a plurality of inventions do not constitute evidence of the market value of the right to employ but one of the inventions," but this rule has no application when, as in the case at bar, there is involved only one device incapable of being divided into separate and distinct inventions. As the master has well stated in his report: "Of course the plaintiff can recover damages only for infringement of the patent in suit. But it is not quite accurate to say that the patent in suit covers only the recess, which, considered alone, is an intangible abstraction. It has already been held by the District Court that the patent covers 'the contracted portion above the setting shoulder *in combination* with the setting shoulder.' * * * The tool is a concrete, unitary article, which cannot be split up into independent inventions.

It was 'a complete thing, consisting of a certain combination of elements. The defendant used it as such, the whole of it.' * * * The patent covers the combination of the setting shoulder with the recess above it, and the royalty was for the use of that combination." With this statement of the master I am fully in accord.

In view of the opinion of Judge Anderson, this court can hardly be expected to be influenced by defendant's attempts to belittle the value of the recess. That learned judge has given it as his opinion that, "in the practical art of blind eyeletting, this contracted portion above the setting shoulder has come to be regarded as of great utility and value; it appears to be the essential factor in a successful blind eyelet setting tool."

The master has concluded that the royalties were paid only for the use of the combination of the setting shoulder with the recess above it, or, in other words, for the invention covered by the patent in suit. His conclusion is based upon the facts that the combination was essential; that substantially the entire value of the punch was attributable to it; that there was no general market for the device without it; that no satisfactory substitute appeared during the infringing period; that the royalties remained the same, being neither raised by acquisition nor reduced by loss of patent claims to other features; that defendant found it necessary to use the recess; and that plaintiff never obtained any other patent monopoly on which to charge royalty. These facts are supported by evidence.

I concur in the conclusion and accept the reasons as wholly adequate.

2. Coming to the second issue relating to the reasonable royalty: The defendant agrees that "this is a typical case for recovery on the basis of reasonable royalty." It also concedes that "the particular sum arrived at has to be more or less arbitrarily found on the basis of general evidence," citing K. W. Ignition Co. v. Temco Electric Co. (C. C. A.) 283 F. 873; Dunkley Co. v. Central California Canneries (C. C. A.) 7 F.(2d) 972; Merrell Soule Co. v. Powdered Milk Co. (C. C. A.) 7 F.(2d) 297.

The defendant, however, contends that the master should have found the reasonable royalty to be only a fraction of the royalty paid by the Atlas Tack Company. It apportions the royalty among the three features of the device as follows: 70 per cent. for the upsetting shoulder; 20 per cent. for the abutment; and 10 per cent. for the recess—and

on this basis suggests, as reasonable, royalties aggregating only $7,713.56. There are several reasons why this suggestion cannot be followed.

The theory of apportionment, as already shown, cannot be adopted; the apportionment is entirely arbitrary, with no evidence to support it; the result is not reasonable and it ignores the special circumstances which led the master to find the royalty paid by the Atlas Tack Company less than a reasonable royalty. The finding of the master, that a reasonable royalty was half way between the royalty paid by the Atlas Tack Company and the established royalty for use, while more or less arbitrary, nevertheless has general evidence to justify it, and may be regarded as fair to all parties. I am not persuaded that I ought to disturb it.

3. Respecting the master's computation of the reasonable royalty on eyelets sold to licensees of plaintiff and of the Atlas Tack Company, it may be observed that this issue involves the construction of the license agreements. The defendant construes it to grant a general license to use, which carried with it the right to make, or procure wherever the licensee chose, the licensed tool. So construed, defendant's infringement would not extend to any of its tools placed with plaintiff's licensees or with those of the Atlas Tack Company, and the reasonable royalty should not be computed on any eyelets set with these tools. Should it be so construed? The license purports to grant the right to use the device. There are no express provisions granting to the licensee the right to make it or to have it made for him. The right is granted subject to the condition that the licensed punching and setting devices shall remain the property of the licensor, who agrees to furnish the same free of charge. The license must be so construed as to give effect to the intention of the parties, and that intention should be found, if possible, in the instrument itself. The provisions of the license relating to retention of ownership and requiring the licensor to provide the tool without charge are both inconsistent with any intention that the licensee may make or may procure from other sources, the licensed punch. It appears in evidence that the plaintiff's licensees did not pay to plaintiff any royalties on eyelets set with defendant's tools, and that the conduct of the parties under the agreement was also inconsistent with defendant's interpretation of the license. The master therefore correctly computed the reasonable royalty on 1,768,172,779 eyelets set with defendant's tools by licensees of plaintiff or of the Atlas Tack Company.

[6] 4. As to interest: It is well settled that, when damages are based on established royalties, interest may be awarded from date of infringement. Locomotive S. T. Co. v. Pennsylvania R. Co. (C. C.) 2 F. 677; Munising Paper Co. v. American Sulphite Pulp Co. (C. C. A.) 228 F. 700. And interest has been awarded when damages were based on a reasonable royalty, but it is defendant's claim that damages based on reasonable royalty are unliquidated, and that, until liquidated in the proceeding, no interest should run. Munger v. Perlman Rim Corp. (C. C. A.) 275 F. 21; Gear Grinding Machine Co. v. Studebaker Corp. (C. C. A.) 4 F.(2d) 510. But in B. F. Goodrich Co. v. Consolidated Rubber Tire Co. (C. C. A.) 251 F. 617, the court concluded that interest should run from end of infringing period. In that case it was deemed impossible to determine upon what sum interest should have been paid during any one year of the period. Walker is authority for the proposition that interest on royalties (and he makes no distinction between established royalties and reasonable royalties) should be allowed from the time those royalties ought to have been paid. Walker on Patents (5th Ed.) § 571; See, also, Tatham v. Le Roy, 2 Blatchf. at page 494, Fed. Cas. No. 13,760.

In the case at bar, the master has been able from the evidence to ascertain with reasonable definiteness the date when the royalties should have been paid, and I can see no valid reason why the plaintiff is not entitled to recover as a part of his damages interest from the time when the royalties should have been paid.

[7] 5. The fifth of the issues raised by defendant's exceptions is whether the plaintiff is entitled to recover damages for any period prior to the date of filing of the bill of complaint. There was no proof that the plaintiff had given notice to the public by marking his patented device, as required by R. S. § 4900 (35 USCA § 49 [Comp. St. § 9446]). This section provides, that in any suit for infringement by the party failing to so mark, no damages shall be recovered by the plaintiff except on proof that the defendant was duly notified of the infringement. The plaintiff does not claim that he notified the defendant of the infringement, but in his bill of complaint he alleges that the defendant was duly notified of the infringement, and the defendant in its answer denies infringement. The question therefore was raised by the plead-

ings (see Lorain Steel Co. v. New York Switch & Crossing Co. [C. C.] 153 F. 205) but otherwise it was not pressed upon the attention of the court until the case was before the master. I think the defendant has not waived any rights to invoke the provisions of the statute. Lorain Steel Co. v. New York Switch & Crossing Co., supra; Flat Slab Patents Co. v. Turner (C. C. A.) 285 F. 257; Dunlap v. Schofield, 152 U. S. 244, 14 S. Ct. 576, 38 L. Ed. 426. Nor do I think the order of reference to the master precluded him from excluding damages sustained by plaintiff prior to notice. In Austin-Western Road Machinery Co. v. Disc Grader & Plow Co. (C. C. A.) 291 F. 301, cited by the master, the order of reference required the master to find damages for a definite period. In the present case the order is to find "all damages to which the plaintiff may be *lawfully* entitled."

The plaintiff further contends that, even if the question is open to the defendant and the master has authority to exclude such damages, he ought not to do so since the defendant had actual knowledge of the infringement. It is true that defendant had knowledge of the patent soon after it was granted, and was aware of the infringement, but the plaintiff does not prove that he ever gave defendant notice of the infringement prior to date of the filing of this bill of complaint. The statute requires some affirmative act on the part of the patentee. Compliance is not proved by showing that the defendant acquired knowledge of the patent, or even of the possible infringement, from some independent source. Pairpoint Manufacturing Co. v. Eldridge Co. (C. C.) 71 F. 307; Gibson v. American Graphophone Co. (C. C. A.) 234 F. 633; Westinghouse E. & Mfg. Co. v. Condit Elec. Mfg. Co. (C. C.) 159 F. 154; Dunlap v. Schofield, supra.

I rule, therefore, that plaintiff cannot recover damages accruing before the filing of the bill of complaint, and, in accordance with an alternative finding of the master, the damages will be reduced by the amount of $20,800, which is the part of said damages on the basis of reasonable royalty that accrued prior to August 19, 1916.

6. The last of the issues above referred to arises on defendant's claim that plaintiff has not diligently prosecuted his suit. The findings of fact do not support this contention. Notwithstanding plaintiff's suit, defendant elected to continue its acts of infringement, and it should abide the consequences. Much of the 5½ years between 1916 and 1922 was spent in litigating with this defendant in other tribunals plaintiff's rights to this and to other closely related inventions. There is no indication that plaintiff did anything to prevent defendant from bringing this suit on for hearing earlier, if it had desired so to do. The element of equitable estoppel is wanting. See Walker on Patents (5th Ed.) § 596, and cases cited. The defendant has not made out this defense.

[8] The only exceptions remaining to be disposed of are those which relate to findings of fact bearing upon the claim of plaintiff to increased damages under R. S. §§ 4919 and 4921, and those relating to the exclusion of evidence.

Shall plaintiff's damages be increased? The master has made no recommendation, but has reported findings of such facts as will enable the court to determine whether it shall, "according to the circumstances of the case," order a decree for any sum above the amount of actual damages sustained These findings of fact are amply justified by evidence adduced before the master. The controlling facts gathered, not only from the master's report but from the whole record, including the opinion of Judge Anderson, are these:

Prior to 1914, defendant had put out blind-eyeletting devices which had not proved satisfactory. In January, 1914, plaintiff filed his application for the patent in suit, and soon thereafter began to put on the market his eyeletting punch. About the same time, defendant began to put on the market a similar device, claiming under rights (subsequently held invalid) secured February 19, 1914, from one Cote, whose invention did not include the recess above the setting shoulder. Defendant's tools, however, were made both with and without this recess. In May, 1914, plaintiff acquired alleged rights in the Deitsch invention covering the upsetting shoulder, and on August 7, 1914, disclaimed as to this feature of the tool on his application and on August 10, 1914, filed an application based on the invention of Deitsch. In the meantime, on August 1, 1914, one Henry Doulett had filed an application for a patent on a tool quite unlike plaintiff's, but embodying the features of the restricted shoulder and adjustable abutment but without any recess above the setting shoulder; in fact, Judge Anderson finds that the "contracted portion above the setting shoulder would be inconsistent with the clinching theory involved in Doulett's alleged invention." Plaintiff's patent issued October 6, 1914. On October 9, three days later, defendant's eyeletting department was advised by defendant's patent department that the eyeletting tools with the

recess, put out by the defendant, clearly infringed plaintiff's patent, and on that day all the infringing tools were called in. Almost immediately thereafter defendant bought Doulett's rights, and in November, 1914, it caused Doulett to file an amended application claiming the recess above the shoulder, and brought about an interference with the plaintiff's patent. It also brought about interference with the Deitsch application. In the Patent Office and on appeal to the Court of Appeals for the District of Columbia, the defendant was successful. In the interference proceedings of Doulett v. Muther, 51 App. D. C. 201, 277 F. 600, the defendant not only refused to produce, but strenuously and successfully resisted all attempts to compel the production of, correspondence between Doulett and his patent attorneys, which had a strong tendency to show that Doulett first conceived and reduced to practice his invention in March, 1914 (two months after Muther had filed his application), and which also tended to show that Doulett's conception did not include the recess. This correspondence was known to defendant as early as June, 1916, but the nature of it was not disclosed to the attorney who was representing the defendant in the interference proceedings until after Doulett's case had been closed. It was produced at the hearing in this court and given due weight by the learned judge, who found, by an overwhelming weight of evidence that Doulett had not invented any blind-eyeletting device with a contracted portion above the restricted shoulder in 1913, or at any other time. I gather from his opinion that much of the testimony, offered to overcome Doulett's written statement that he had first used his invention in March 1914, did not impress the court.

It is inconceivable, on this state of facts, that the defendant could have entertained, at any time after it began to infringe in May, 1915, a sincere belief that Doulett was the prior inventor of the Muther device, whatever grounds it may have had for believing that Doulett had first invented the upsetting shoulder and an adjustable abutment. One cannot escape the conclusion reached by the master that the defendant "deliberately continued the infringement in entire disregard of plaintiff's rights until enjoined, * * *" and "that the defendants at least after June, 1916, did not infringe in the sincere conviction that the Muther patent was anticipated and invalid, or under a merely mistaken belief in their legal rights, but took the risk under the incentive of large benefits to be derived from the infringing business, and infringed at their peril."

The infringement was willful, deliberate, and intentional, and a case seems to be presented for the exercise of the discretionary power of the court to increase plaintiff's legal damages. The more difficult matter is to determine the extent of the increase. While doubtless one of the purposes of the statute was to deter acts of infringement and compel a due respect for the monopoly secured by the patent, yet I do not conceive it to be the intent of the law to unjustly enrich the injured party at the expense of the wrongdoer. As I had occasion to point out in a recent opinion, the early decisions upon the statute indicated a purpose to administer the law "more with a desire to render full justice to the party wronged than to inflict punishment upon the infringer. * * * The underlying purpose of the statute is to provide adequate compensation for the injury sustained by infringement of patent rights, where the strict rules of law would not afford it." Beacon Folding Machine Co. v. Rotary Machine Co. (D. C.) 17 F.(2d) 934.

In the case at bar, the plaintiff not only has suffered loss in royalties, but, in order to meet the succession of attacks by the defendant upon his exclusive rights, he has been to no small expense. Moreover, as the master finds, the plaintiff has been deprived of profits, not determinable and not compensated by the damages to which the plaintiff is legally entitled. An increase reasonably adequate to compensate for these losses will impose sufficient punishment to satisfy the statute. I have adjudged a sum equal to 25 per cent. of the amount of damages, or $48,367.80, to be a proper sum to add to the damages legally due the plaintiff.

[9] The only exception to the exclusion of evidence argued related to the refusal of the master to admit, as evidence in the case, the record in the suit of Muther v. United Shoe Machinery Co. (D. C.) 7 F.(2d) 954, prosecuted in the federal courts of New Jersey, and the opinion of Judge Bodine rendered in said suit. This suit was brought by Muther to compel the issuance of a patent on an application based upon the alleged invention of one Deitsch involving an unrecessed tool. The question there was one of priority of invention between Deitsch and Doulett, and the plaintiff's invention covered by the patent in this suit was not there involved. The record and the opinion were clearly immaterial and incompetent.

The sixty-seventh exception of defendant

is sustained. All other exceptions are overruled.

Plaintiff may recover in these proceedings the sum of $241,839.00 arrived at as follows: $214,271.20 less $20,800.00, plus $48,367.80.

Decree accordingly may be entered.