CEECO MACHINERY
MANUFACTURING,
LTD., Plaintiff,

v.

INTERCOLE, INC., Defendant.

Civ. A. No. 91–40019–XX.

United States District Court,
D. Massachusetts.

Nov. 16, 1992.

Gerry A. Blodgett, Blodgett & Blodgett, Worcester, MA, Mark J. Ingber, Lackenbach, Siegel, Marzullo & Aronson, Scarsdale, NY, Myron Greenspan, Lackenback, Siegel, Marzullo, Aronson & Greenspan, Scarsdale, NY, for plaintiff.

David Wolf, Wolf, Greenfield & Sacks, Boston, MA, for defendant.

## MEMORANDUM AND ORDERS

WOODLOCK, District Judge.

In 1989, the defendant Intercole purchased wire manufacturing equipment allegedly infringing the plaintiff Ceeco's patent. Ceeco sued for injunctive and monetary relief under the patent laws and ch. 93A. Intercole has moved for summary judgment, asserting that Ceeco had not complied with marking/notice requirements that are a prerequisite to the recovery of damages. For purposes of these motions, Intercole does not challenge the fact of infringement. Ceeco has cross moved for summary judgment on the grounds that it did furnish the appropriate notice and that its damages are clearly established on the record.

At a hearing on April 3, 1992, I found that the issue of damages was not an appropriate one for summary judgment, but took the issue of notice under advisement and directed the parties to submit additional briefs on the issue. I now find that, while a genuine dispute clouds the issue of proper marking, the plaintiff has met its alternative burden of showing actual notice. I also decline to provide interlocutory injunctive relief and leave the ch. 93A issues unresolved.

## I. FACTUAL BACKGROUND

In assessing the parties' respective motions for summary judgment, I must view the record in the light most favorable to the non-movant and indulge all inferences favorable to that party. Where parties on both sides move for summary judgment, I must "evaluate each motion separately, being careful to draw inferences against each movant in turn." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The motion should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). I summarize the factual record below, and highlight where the parties are in significant dispute.

The plaintiff, Ceeco Machinery Manufacturing Limited, is a Canadian manufacturer of machines that fabricate cable and wire products. On March 11, 1986, Ceeco received patent number 4,574,571 for an invention entitled "Apparatus for and Method of Manufacturing Taped Products with Double Twist Equipment." Complaint at ¶ 10. The patent forms issued reveal the innovation of the method and apparatus as combining two previously distinct processes. Double twist twinners, bunchers, and closers had been in existence for many years as the fastest means of combining a plurality of wires by imparting a double twist to them. Electrical cables often require a protective shield or tape to prevent pick-up of external interference. This shield was traditionally applied on single twist machines, because double twist machines would typically stretch and crack the tape. The plaintiff's patent describes a machine and method that permits the manufacture of taped cables on double twist machinery, thereby significantly enhancing speed and efficiency. An essential component of the new apparatus was a device called a pretwister. *See* Exhibit 1, Ceeco's Appendix of Exhibits in Support of its Opposition to Intercole's Motion for Summary Judgment (hereafter Ceeco's Appendix).

The defendant, Intercole, Inc., is a Pennsylvania company that makes and sells wire and cables. It maintains three Massachusetts divisions that are relevant to this lawsuit: Montrose Products, Mohawk Wire and Cable, and West Penn Wire. Complaint at ¶¶ 3–5. While the chronology is not absolutely clear from the pleadings and memoranda, it appears that, sometime during 1989, these divisions purchased from New England/CFL five machines equipped with pretwisters that allegedly infringed Ceeco's patent.[1] The earliest of these purchases appar-

---

**1.** The Complaint at ¶¶ 18–20 identifies four such purchases, but subsequent discovery revealed in fact that the divisions bought five machines. *See* Memorandum in Support of Defendant's Motion for Summary Judgment or in the Alternative for Partial Summary Judgment at 3 (hereafter Defendant's Memorandum); Defendant's Answers to Plaintiff's First Set of Interrogatories at 7,

ently took place on January 12, 1989. Exhibit 21, Ceeco's Appendix. The defendant explains that, prior to suit, two of the machines were used with the accompanying pretwisters to make approximately 4,500,000 feet of electrical cable, while the other three were only used after the pretwisters were removed. For the purposes of its motion, Intercole concedes that use of the two machines with the pretwister infringed Ceeco's patent. Defendant's Memorandum at 3. The remaining three, having never been used with pretwisters, allegedly never infringed. Defendant's Concise Statement at ¶ 8.[2]

The parties dispute the circumstances surrounding the purchase of the five machines. Ceeco asserts that, as early as 1987, it began promoting the sale of its patented machines to Montrose and Mohawk. Complaint at ¶ 15. Alec Knight, who was responsible for soliciting potential buyers of Ceeco's products, states by declaration that on September 14, 1988, he visited Montrose and provided its employees with a brochure describing the taping machine and indicating that it was patented. Knight Declaration at ¶ 6, attached to Ceeco's Memorandum and Supporting Declarations in Opposition to Intercole's Motion for Summary Judgment or in the Alternative for Partial Summary Judgment and in Support of Cross Motion for Summary Judgment or in the Alternative for Partial Summary Judgment (hereafter Ceeco's Memorandum); see Ceeco brochure, Exhibit 20, Ceeco's Appendix. On February 23, 1989, Knight returned to Montrose and advised employees that Ceeco's machine was patented and that taping machines using

pretwisters would come within the scope of the patent. Id. at ¶ 8.

Sometime during early 1989, Knight heard that Montrose was considering purchasing a similar machine with a pretwister from a Ceeco competitor, and he reiterated that Ceeco had an exclusive lock on such equipment. He believed that Intercole was still interested in Ceeco's machines, although they were reluctant to purchase one because of the high price tag. Despite the fact that Montrose and Mohawk did ultimately buy machines from New England/CFL, they deliberately led Knight to believe that such was not the case until October 18, 1989. Id. at ¶¶ 9–12. Ceeco suggests that Intercole was in fact using information provided by Ceeco during the sales meetings to help New England/CFL manufacture machines that, at $60,000 less than Ceeco's, could perform the same patented processes. See Ceeco's Memorandum at 13.

Intercole views the events of 1989 differently. The defendant does not dispute that Ceeco was soliciting its business, but insists that it never knew of Ceeco's patent. Defendant's Concise Statement at ¶ 12. Intercole argues that Ceeco's machines were not marked with a patent number, and that Knight's references in sales meetings to possible infringement were inadequate to notify Intercole of the existence of the patent. Defendant's Memorandum at 9–10. Intercole further insists that it did not inform Knight that it had already bought taping machines from New England/CFL, because it considered its inventory of machines to be confi-

Exhibit F, Defendant's Concise Statement of Material Facts Presented in Plaintiff's Cross Motion for Summary Judgment for which Defendant Contends there Exists a Genuine Issue to be Tried (hereafter Defendant's Concise Statement).

2. The defendant articulates its concession of infringement unclearly. As noted, the Defendant's Memorandum at 3 concedes, "for the purposes of this motion only," that use of the two New England/CFL machines did infringe Ceeco's patent. In its Concise Statement at ¶ 8, Intercole explains that it admits "for the purposes of the damages portion only, the fact of infringement but not the amount," and that it only used two rather than five machines in a fashion that infringed. I take from this series of statements that Intercole will not challenge the validity of

the patent or the fact of infringement, at least with respect to two of the five machines, for purposes of the motions dealing with the issue of notice. Presumably, however, if Intercole loses on the notice issue, it reserves its rights later to challenge the fact of infringement. The plaintiff interprets Intercole's concession similarly in Plaintiff's Opposition to Defendant's Motion to Compel Discovery and in the Alternative Plaintiff's Application for Protective Order at 6 & n. 9 (docket # 35). What the plaintiff there refers to as "the first, damages phase" of this litigation is presumably this first phase dealing with the issue of marking and/or notice as a prerequisite to damages. Any actual assessment of damages will, according to my ruling at the April hearing, occur at a later stage.

dential, proprietary information. Luikey Deposition at 118, Exhibit 13, Ceeco's Appendix; Defendant's Concise Statement at ¶ 5. Finally, Intercole employees insist that the defendant would not have purchased Ceeco's machines in any event, because those machines were too expensive and used reels that were too small. Bandas Deposition at 8–9, 12, 33, Exhibit G, Defendant's Concise Statement. In this regard, the meetings with Knight had no influence on Intercole's decision to purchase from New England/CFL. Defendant's Concise Statement at ¶ 3.

On February 8, 1991, Ceeco filed suit, alleging in two counts patent infringement and unfair and deceptive acts in violation of Mass. Gen.L. ch. 93A, § 11. The plaintiffs seek both damages and an injunction preventing Intercole from using or selling machines that violate Ceeco's patent. Intercole's motion for summary judgment is based on the contention that Ceeco's damages claim is barred because Ceeco never notified the defendant of the patent, and that the injunctive relief claim is mooted by Intercole's decision prior to suit to stop using the pretwisters. Ceeco's motion for summary judgment advances the contention asserting that notice was given, Intercole has conceded liability, the damages are readily calculable from lost profits, and the claim for an injunction is still viable.

## II. LEGAL ANALYSIS

### (A) Notice under 35 U.S.C. § 287

The core claim of Intercole's motion is that Ceeco is barred from seeking damages for failure to comply with 35 U.S.C. § 287(a), which states,

> Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the paten-

tee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

Intercole argues that Ceeco has been unable to allege or show during discovery that it marked its machines in compliance with this statute, or that it duly notified Intercole of infringement. Having failed to meet the test of § 287(a), Ceeco cannot seek damages, even if, as conceded, certain acts of infringement did take place. Defendant's Memorandum at 8–12.

■ As a general matter, § 287 makes appropriate notice of the patent a prerequisite for the patentee's collection of damages from an infringer. Describing the predecessor to § 287, the Supreme Court explained, "Two kinds of notice are specified—one to the public by visible mark, another by actual advice to the infringer. The second becomes necessary only when the first has not been given." *Wine R. Appliance Co. v. Enterprise R. Equipment Co.,* 297 U.S. 387, 395, 56 S.Ct. 528, 530, 80 L.Ed. 736 (1936); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 161, 109 S.Ct. 971, 983, 103 L.Ed.2d 118 (1989) (citing *Wine* and noting that availability of damages is made contingent upon affixing notice of patent to the protected article). In order to collect damages for patent infringement occurring prior to suit, a plaintiff bears the burden of pleading and proving compliance with either the marking requirements or with the specific notice requirement. 5 Donald S. Chisum, *Patents* § 20.03[7], at 20–263—64 (citing *Dunlap v. Schofield,* 152 U.S. 244, 14 S.Ct. 576, 38 L.Ed. 426 (1894)). Intercole argues that Ceeco has failed to prove that it provided either type of notice, and thus is precluded from seeking damages. I address each species of notice in turn.

### (1) Visible Mark

■ As to the first kind of notice—physical marking of the machines in question—Intercole marshalls a number of pieces of evidence having varying degrees of persua-

siveness. In its initial brief, Intercole pointed to the deposition of Renato Rossi, Ceeco's executive vice-president, as proof that notices of the patent and its number were not affixed to the taping machines until six months after suit was filed. *See* Defendant's Memorandum at 4–6. Intercole's selective quotation of Rossi's deposition obfuscates what the deponent said, and a reading of the entire passage of the transcript from which quotes are drawn clarifies that he meant something altogether different than the defendant suggests. Rossi first identified a plate in use during 1991, which plate indicates the patent number of the taping machines. He then described that plate as an "update" designed to accommodate new patents that are added in foreign countries. He conceded that he was unable to find examples or copies of prior plates used on the machines and could not testify to "direct knowledge" of such plates. Rossi Deposition at 26–32, Exhibit C, Defendant's Memorandum. He did not, however, state that the update was the only version of the plate ever attached to the machines.

Rossi's testimony is amplified by his declaration, where he explains Ceeco's policy with respect to patent notices. He describes a long-term practice of protecting patentable machinery and points to a 1986 letter from Ceeco's attorney advising it that the newly patented taping apparatus should be marked with a notice to preserve future rights to damages. Rossi Declaration at ¶ 13, attached to Ceeco's Memorandum; Letter from Attorney Greenspan, Exhibit 8, Ceeco's Appendix. He further explains that plates are updated to reflect current foreign patents, that they are ordered only to satisfy immediate needs, and that consequently none is kept in inventory as a stock item. Rossi Declaration at ¶¶ 16–19. This description is borne out by Ceeco's purchasing manager, shop foreman, and engraver, all of whom similarly describe an informal, "as needed" process for the plates. *See* Arnold, Gomez, and Calabria Declarations, attached to Ceeco's Memorandum. In light of these uncontradicted statements that plates are made as needed and not kept in stock, I must reject Intercole's assertion that Rossi's words show conclusively that plates were only affixed to the machines after suit was filed.

Intercole also offers the testimony of a former employee as further proof of the lack of a visible notice. Former plant manager Brian Lathrop testified that he had seen a Ceeco taping machine in Atlanta, and that he did not remember seeing a patent number on it, although he conceded that he was not looking for such a notice at the time.[3] Lathrop Deposition at 79, Exhibit I, Defendant's Memorandum. I do not find his statement dispositive or even particularly probative of § 287 marking. The mere fact he does not recall seeing a notice does not persuade me that, as a matter of law, such notices did not exist.

Shortly after the April 3, 1992 hearing, Intercole produced more affirmative evidence that at least some machines sold during the relevant time period were not marked. Intercole's Executive Vice President of Manufacturing, Barry Gelfand, submitted an affidavit stating that he had located one of Ceeco's patented machines, sold to Du Pont TSL in June of 1989, that did not display a patent notice or indicate a number. Appended to his affidavit are the purchase order indicating the date Du Pont bought the machine and photographs of the machine suggesting that no notice was affixed. *See* Affidavit of Barry Gelfand (submitted with Defendant's Brief Concerning Plaintiff's Failure to Give Actual Notice Required by 35 U.S.C. § 287 (hereafter Defendant's Brief on Notice)). Intercole also submitted an affidavit of one of its current employees who was formerly a market and sales manager for Hitachi, a Ceeco customer. The employee avers that, during his tenure there, Hitachi purchased one of Ceeco's patented machines during 1989, that he never saw a patent number on the machine, and that he has since reconfirmed his belief that the machine was unmarked. *See* Affidavit of Joseph Dellagala (submitted with Defendant's Brief Concerning Plaintiff's Failure to Give Actual Notice

---

**3.** Rossi denies that a Ceeco machine was ever even displayed in Atlanta. Rossi Declaration at ¶ 31.

Required by 35 U.S.C. § 287). Unlike the mischaracterized deposition testimony of Rossi and the nebulous recollection of Lathrop, these later affidavits do provide some support for the proposition that Ceeco was not always scrupulous in marking the relevant machines.

Ceeco responds to Intercole's attack on the issue of marking first by invoking its alleged "strong and strict company policy regarding patent marking." *See* Ceeco's Memorandum at 20. Whenever a patent is issued to Ceeco, its attorneys apparently advise it of the statutory marking requirements. *See* Rossi Declaration at ¶ 13, attached to Ceeco's Memorandum. Ceeco's purchasing manager, shop foreman, and outside engraver all attest to the company's regular practice of preparing and affixing notice plates to all patented machines. *See* Declarations of Arthur Arnold, Antonio Gomez, and Filomena Calabria, attached to Ceeco's Memorandum. This established routine, according to Ceeco, raises the inference and presumption that all relevant machinery was properly marked pursuant to § 287.

Ceeco has also produced additional and more specific evidence that it marked its machines during the relevant time frame. Ceeco submitted the declaration of a customer who bought a patented machine from the plaintiff on January 31, 1989 and who states that the machine has always had a patent marking plate with the relevant patent number inscribed.[4] Ceeco also submits current photographs of that particular plate, and the invoice recording the 1989 purchase. *See* Supplemental Declaration of Renato Rossi, Declaration of Octaviano Aguirre, Declaration of Eduardo Garcia Mejia and attached exhibits (docket # 27). This supplemental material goes part of the way towards substantiating Ceeco's claim that it has always marked the taping machines in compliance with § 287.

Upon review of the total evidence adduced, I find a genuine dispute over whether the machines were marked in accordance with the statute. Without deciding whether a de minimis failure to mark only a few machines would trigger § 287's limitation on damages, I hold simply that the history of marking is too unclear factually to provide a sound basis for resolving the instant motions.

From the perspective of *Intercole's motion,* the cumulative effect of the various declarations by Ceeco employees and the photographs and customer declaration proving marking is to defeat Intercole's insistence that Ceeco cannot prove substantial compliance with § 287. Intercole has not shown as a matter of law that Ceeco will be unable to meet its burden of proving that it marked virtually all of its machines and that the contradictory affidavits of Barry Gelfand and Joseph Dellagala are either false or anomalous.

From the perspective of *Ceeco's motion,* the plaintiff has not shown conclusively that it can meet its burden of proving marking as a matter of law. Proof of marking "as a rule" does not satisfy plaintiff's burden with respect to specific marking and indeed may suggest that "such course has not been uniform and persistent." *See Matthews & Willard Manufacturing Co. v. National Brass & Iron Works,* 71 F. 518 (C.C.E.D.Pa.1895). Moreover, Intercole's recently submitted affidavits and photographs may show that at least some machines left the plaintiff's factory unmarked. Each side having produced evidence supportive of its position, I thus decline to decide either party's motion solely on the issue of marking.

### (2) Actual Notice

■ While the record is unclear as to physical marking, it does reveal more about whether Intercole was in fact notified of its infringement. As noted above, § 287 permits actual notice of infringement to the defendant in lieu of proof of marking. I turn now to whether actual notice was provided in a form sufficient to satisfy § 287.

Ceeco sales representative Alec Knight states in his declaration at ¶ 9 that he told

---

**4.** The customer's declaration in fact lists the purchase date as January 31, *1992* with a receipt date of October 30, 1989. The accompanying declaration of Renato Rossi and the invoice attached as Exhibit D to the Mejia Declaration indicate this to be a typographical error. The purchase date was evidently in 1989, not 1992.

Intercole employees that purchase of a taping machine with a pretwister from a Ceeco competitor would violate Ceeco's patent. He also showed the same employees a brochure indicating the existence of the patent some months earlier. *Id.* at ¶ 6. His notes of a February 28, 1989 meeting at Montrose confirm that he discussed possible infringement by New England/CFL with Montrose employees, and that they had previously been alerted to the problem. *See* Exhibit 15, Ceeco's Appendix.

Intercole employees recall the same meetings. Barry Gelfand, Intercole's executive vice president of manufacturing, testified that Knight told him that, with respect to a piece of equipment Intercole had purchased, "there may be a patent infringement." Gelfand Deposition at 6, Exhibit H, Defendant's Memorandum. Former Intercole employee Brian Lathrop testified that Knight mentioned Ceeco's patent in early 1989, that Knight was concerned that purchases from competitors might violate Ceeco's patent, and that "Ceeco felt that if we bought a machine with a pre-twister on it, that the pre-twist concept would be an infringement upon their patents." Lathrop Deposition at 9, 11, 58, Exhibit 9, Ceeco's Appendix. Nicholas Bandas, another Intercole employee, recalled that, after ordering but before receiving the New England/CFL machine, Knight advised Lathrop of his patent concerns. Bandas Deposition at 9, Exhibit G, Defendant's Concise Statement. Finally, John Luikey, Intercole's Director of Manufacturing, remembers an October 25, 1989 meeting with Knight, where the two discussed the fact of patent litigation between Ceeco and New England/CFL. Knight inquired whether Intercole had purchased any machines from New England CFL, and Luikey falsely answered no "for purposes of confidentiality." Luikey Deposition at 118, Exhibit 13, Ceeco's Appendix; Luikey Deposition at unnumbered first page, Exhibit H, Defendant's Concise Statement. With Luikey, then, Knight only broached the subject of patent infringement without specifically accusing Intercole, which he was led to believe had not purchased any infringing machines.

There is thus no dispute about whether Knight expressed concerns of infringement to various Intercole personnel throughout 1989. It is conceded, however, that he did not provide those personnel with the actual number of the patent that would be infringed. *See* Ex. L, Defendant's Memorandum (letter from Ceeco's counsel to Intercole's counsel agreeing to stipulate that Knight never cited a specific patent number or showed Intercole employees a copy of patent). Intercole argues that Knight's expressions of concern are inadequate to prove that "the infringer was notified" within the meaning of § 287, solely because no number was cited. *See* Defendant's Brief on Notice at 2. The instant motion, in other words, hinges on whether § 287 requires the patentee to include the patent number in his notice to the defendant of infringement.

■ Intercole cites a considerable body of cases that hold that actual notice of infringement must include the same information required for the actual marking of the invention—the word "patent" and the patent number, or, under the prior version of the statute, notice of the day and year the patent was issued. *See Smith v. Dental Products Co., Inc.,* 140 F.2d 140, 152 (7th Cir.) (to show that infringer was duly notified, "proof must be made no less definite and certain than that required" for proof of actual marking), *cert. denied,* 322 U.S. 743, 64 S.Ct. 1146, 88 L.Ed. 1576 (1944); *Franklin Brass Foundry Co. v. Shapiro & Aronson,* 278 F. 435, 437 (3rd Cir.1921) (defendant is not "duly notified" unless "the facts with which he is supplied would, if fixed upon the patented article, constitute 'sufficient notice' "). Since Knight only complained about infringement and did not specifically provide Intercole with a patent number, so the argument goes, the notice of infringement was insufficient to clear the hurdle of § 287 as interpreted by these cases.

The First Circuit appears not to have addressed the issue, although an early District Court has analyzed the statute in some detail. In *Muther v. United Shoe Machinery Co.,* 21 F.2d 773, 779 (D.Mass.1927), the plaintiff contended that, even if he had not provided adequate notice, the defendant was

aware both of the patent and the infringement. The *Muther* Court explained that the defendant's independent knowledge of infringement was not enough, because "[t]he statute requires some *affirmative act on the part of the patentee.*" *Id.* (emphasis added); *see also Dunlap,* 152 U.S. at 248, 14 S.Ct. at 577 (notice to the infringer is "an affirmative fact, and is something to be done by" the patentee). While the *Muther* Court did not outline further the precise information the patentee must provide, I find its emphasis on an "affirmative act" to be significant. Implicit in *Muther* is that the crucial inquiry under the notice statute is not whether the plaintiff precisely stated the patent number or date of issuance to the defendant, but whether the plaintiff has acted affirmatively to notify his adversary of the essential information: that the plaintiff had a patent on a given item and that the defendant is infringing that patent.

I adopt *Muther's* implicit holding as identifying the governing approach. My reasons are threefold.

First, the plain language of the statute requires only that "the infringer was notified of the infringement." *See* 35 U.S.C. § 287(a). Any requirement that the notice include the patent number has been engrafted onto the statute by courts, and is not part of its plain language. Moreover, the fact that the patent number is specifically required by the statute for a marking, but is not mentioned with respect to actual notice suggests that the actual number is only required for the former.

Second, the Supreme Court in *Dunlap v. Schofield,* 152 U.S. 244, 248, 14 S.Ct. 576, 577, 38 L.Ed. 426 (1894), by terms required only that a plaintiff inform the defendant that he has a patent and that defendant is infringing it. *Id.* at 248, 14 S.Ct. at 577. While the Court was not addressing the exact issue whether a number must be provided to the defendant, its more general description of actual notice suggests a less stringent approach than Intercole requests.

Third, as Ceeco persuasively argues, the two types of notice authorized by the statute logically have different requirements and dimensions. *See* Ceeco's Statement on the

Sufficiency of Actual Notice of Knowledge by Intercole of Ceeco's Patent and Suit at 3–7. *Dunlap* recognizes as much where it states that notice may be provided "either *to the whole public* by marking ... or *to the particular defendants* by informing them of his patent and of their infringement of it." 152 U.S. at 248, 14 S.Ct. at 577 (emphasis added). Marking provides constructive notice to the world at large that a given item is patented and has been assigned an identifying number. Since the notice is merely "legal" or constructive, it is reasonable to require that it be very specific in identifying the patent number, so that potential infringers would have the opportunity to use the listed number to look up the patent claim and assess whether their own invention might risk infringement. Actual notice, by contrast, alerts a specific defendant that the patentee is claiming infringement as to a specific item. Because the individually notified defendant cannot plead ignorance of the existence of the patent, it is less important that he be given the precise patent number, as long as the patented invention itself is identified. Once actually notified, the alleged infringer, who is already in communication with the patentee, can at little cost request the number and engage in an assessment of the claim's merits. Indeed, it has been held that once a potential infringer has notice of another's patent rights, he has an affirmative duty to "exercise due care to determine whether or not he is infringing." *See Bott v. Four Star Corp.,* 807 F.2d 1567, 1572 (Fed.Cir. 1986); *Milgo Electronic v. United Business Communications, Inc.,* 623 F.2d 645, 666 (10th Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980). Due care would presumably include requesting the number of the patent. In short, the crucial distinction is that, because marking permits the *presumption* that the defendant had notice, it must comply with more stringent standards. Actual notice, precisely because it is targeted at the individual defendant and obviates the need to make presumptions about what he knew, is consequently less demanding.

Given the language of the statute, the relevant caselaw, and the structural differences

between the two types of notice, I find here that Intercole was actually notified in a fashion sufficient to satisfy § 287. Alec Knight took the "affirmative" action required by *Muther* in telling Intercole employees that, if they purchased a machine with a pretwister from New England/CFL, they would be infringing Ceeco's patent. The employees' deposition testimony, submitted by *both* parties, makes clear that such discussions took place. The employees were also apparently aware that Ceeco was involved in litigation with New England/CFL over the very same product. To the extent that Knight's warning was less explicit than would typically be required, Intercole appears to be largely responsible for the conditional nature of his words. By Luikey's own admission, Intercole continued to reassure Knight that it had not purchased a machine with a pretwister well after it in fact had. The provision for giving actual notice would be rendered meaningless if defendants could evade such notice by deliberately concealing their infringement. Moreover, the cases do not require the charge of infringement to be direct. *See Chubb Integrated Systems, Inc. v. National Bank of Washington,* 658 F.Supp. 1043, 1051 (D.D.C.1987) (§ 287 satisfied where defendant understood plaintiff's offers of a license to be "veiled charges of infringement"). In these circumstances, I find that Knight's admonitions provided actual notice within the meaning of § 287.

**(B) Injunctive Relief**

■ Ceeco also seeks an injunction preventing the defendant from using any of the infringing machines. Intercole has suggested that Ceeco's claim for injunctive relief has been mooted by Intercole's choice to remove pretwisters from all five machines prior to suit. Defendant's Memorandum at 2. Intercole's decision in this regard may limit its damages but does not require dismissal of the claim for an injunction. It is apparent that the pretwisters may be easily reattached to the taping machines to recreate the patented apparatus. Rossi Declaration at ¶ 53. Moreover, as Ceeco argues, denial of the injunction for Intercole's voluntary cessation of infringement would leave Intercole "free to return to [its] old ways." *See City of*

*Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 n. 10, 102 S.Ct. 1070, 1074–75 n. 10, 71 L.Ed.2d 152 (1982) (citations omitted). Nevertheless, I am disinclined to enter injunctive relief on an interlocutory basis in the absence of some showing that there is a real prospect of future infringement. Nothing in the development of this case to date has raised that prospect. Accordingly, I decline to issue injunctive relief at this time.

**(C) Chapter 93A**

The second Count of Ceeco's Complaint alleges a cause of action for unfair and deceptive acts under Mass.Gen.L. ch. 93A, § 11. Neither party mentions this claim in its respective briefing on the cross motions for summary judgment and consequently the claim is not ripe for consideration at this time.

### III. CONCLUSION

For the reasons set forth more fully above:

(1) Intercole's motion for summary judgment is DENIED in its entirety; and

(2) Ceeco's motion for summary judgment is DENIED, except for so much as relates to the issue of establishing actual notice, as to which it is GRANTED.